**NATIONAL LABOR RELATIONS BOARD**
**v. ECLIPSE LUMBER CO., Inc., et al.**

No. 13212.

United States Court of Appeals
Ninth Circuit.

Nov. 12, 1952.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Fannie M. Boyls and William J. Avrutis, Attys., N.L.R.B., Washington, D. C., for petitioner.

Patterson, Maxwell & Jones, Seattle, Wash., for respondent Eclipse Lumber Co.

Walthew, Gershon, Oseran & Warner, Seattle, Wash., for respondent International Woodworkers of America.

Before DENMAN, Chief Judge, and HEALY and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is a petition by the National Labor Relations Board to enforce certain orders of the Board against respondent company and respondent union.

A. *The Board's Order Against the Company.*

This order is based on a claimed violation of Section 8(a) (3) (B) of the Labor Management Act, 29 U.S.C.A. § 158(a) (3) (B), hereafter called the Act, which provides "That no employer shall justify any discrimination against an employee for

nonmembership in a labor organization * * * (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership".

That is to say, that when a union shop agreement is entered into under Section 8(a) (3) of the Act, the Company could not discharge a member of the Union on the Union's demand if it had reasonable grounds for believing that the Union's demand for his discharge was on grounds other than for non-payment of periodic dues and required initiation fees. The Company does not question that the "periodic dues" are those due the Union, subsequent to the making of the union-shop contract. N.L.R.B. v. International Union, etc., 7 Cir., 194 F.2d 698, 701. Colonie Fibre Co. v. N.L.R.B., 2 Cir., 163 F.2d 65.

The facts, in brief, are: In 1944, one Marl, then working for the Company, refused to pay a Union political assessment and thereupon left the Union and paid no more dues. Under the Union rules he remained a member until he was "dropped" by some affirmative act of the Union which was not taken. He remained a "suspended" member of the Union.

In 1948, he returned to work with the Company and was working there when on April 25, 1950, the Union entered into a union-shop contract providing that:

"All employees shall be required, as a necessary condition of continued employment, to become members of the Union in good standing not later than thirty (30) days from the effective date of this agreement or the beginning date of their first employment, whichever occurs later, and to maintain such membership in good standing thereafter.

"The Union shall notify the Employer in writing of any employee who fails to become or remain a member of the Union in good standing, and the Employer shall, immediately upon receipt of such notification dismiss any such employee from employment."

The Union had a constitutional provision to the effect that a delinquent member could be reinstated upon payment of the regular new member initiation fee of $10. and six months' back dues of $2.50 a month, and one month's dues at the increased rate of $2.75, totaling $27.75. On inquiry of the Union Marl was told the amount he had to pay was the sum of $85.25, consisting of $70.50 past dues, $10. initiation fee, one month's advance dues of $2.75 and a $2. fine for non-picketing in a prior strike.

When Marl protested, he was told by the Union treasurer that if he did not pay " * * * at the end of 30 days you know what happens." After thirty days had expired the Union notified the Company to dismiss Marl, which the Company did.

On or about May 16, Marl told one Carpenter, a supervising employee of the Company, that the Union was demanding $85.-25, including a fine, for his reinstatement in the Union. Carpenter stated to Marl, "If you don't pay it, *we* will have to let you go." The discharge followed on May 29th.

There is no direct evidence that Carpenter knew that the $83.25 demanded as dues covered a period prior to April 25, 1950, when the Union-shop contract was made; but it is obvious that if the amount had accumulated in the three weeks to May 16, when Carpenter was told of the sum of $83.25, that the annual Union dues would amount to upwards of $1,550., an absurd sum. He also was told that the amount included a fine, the payment of which in no event could be a condition of his right to employment. We agree with the finding of both the Board and trial examiner, that Carpenter knew that the Union's demand for Marl's discharge was for Union obligations other than current dues or initiation fees.

We are of the opinion that the evidence supports the Board's finding that Carpenter, who told Marl, "*We* will have to let you go," was a supervisory employee of a rank to charge the Company with knowl-

edge that Marl's discharge was in violation of Section 8(a) (3) (B) of the Act. Carpenter's title was General Sales Manager, but "with reference to the company's *operations* he was the next responsible person" to General Manager Stuchell. He went to the mill for an hour or two every day for the purpose, as he stated, of "going over the operations and seeing what is going so, so that I have a pretty good picture of the entire operation of the mill." In this way, he testified, he made sure that the work "is being done the way I think it should be done."

In so holding, the Board overruled its trial examiner's finding that Carpenter was not an officer whose knowledge of the Union's action charged the Company. This the Board was clearly entitled to do, for the trial examiner's summary of the evidence ignored the above testimony of Carpenter's supervisory rank in the Company's organization. It is not a case where the Board refused to consider the trial examiner's report as in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 491, 492, 71 S.Ct. 456, 95 L.Ed. 456.

■ We find no merit in the Company's contention that it was denied due process because the Board denied its motion to file a brief in reply to the brief of the Board's general counsel. On the filing of the trial examiner's intermediate report, the Board's regulation permits any party to file exceptions to the report and a supporting brief within twenty days or a further extended time. The time was extended and the general counsel filed his exceptions and brief, but the Company filed none.

The regulations provide that:

"* * * Upon special leave of the Board, any party may file a reply brief upon such terms as the Board may impose. * * *"

The Company claims that it is a denial of due process not to give a mandatory right to file a reply brief. We know of no such requirement. As well could a common law judgment be collaterally attacked, if the judge in a case tried to him, without jury, said after hearing from the counsel of both parties, "I will hear no further argument," and decided the case.

■ The Company further contends that if the right to file a reply brief is not mandatory, it was an abuse of discretion not to have granted the motion for one. The general counsel's brief is not before us and there is no showing of how, if at all, the Company was prejudiced and hence no showing of an abuse of discretion.

It is obvious that the only exception affecting the Company the general counsel could make was the finding that no officer of managerial rank knew of the Union's wrong to Marl, the single subject on which the Company's absent brief well could have covered in support of the finding in its favor.

We order enforced the Board's orders against the Company.

B. *The Board's Order Against the Union Because of its Wrongdoing to Marl.*

■ It is obvious from the above evidence that the Union violated Section 8(b) (2) of the Act providing that:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

\*      \*      \*      \*      \*      \*

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; \* \* \*."

■ The Board's order respecting the Union is ordered enforced.

C. *The Board's Order Against the Union Because of Coercive Statements to Union Members Requiring Them to Pay Excessive Amounts to Remain in Proper Standing for Employment Under the Union Shop Agreement.*

The evidence amply supports the findings of the Board that such coercion by the Union caused some fourteen members of the Union to pay it sums in excess of the $12.75 required to be in good standing under the closed shop agreement.

The Board's order respecting the fourteen Union members is ordered enforced.