NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BAKERY AND CONFECTIONERY WORKERS' INTERNATIONAL UNION OF AMERICA, LOCAL 12, AFL-CIO.

No. 12107.

United States Court of Appeals Third Circuit.

Argued April 2, 1957.

Decided June 7, 1957.

Fannie M. Boyls, Washington, D. C. (Kenneth C. McGuiness, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Maurice Alexandre, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Ben Paul Jubelirer, Pittsburgh, Pa., for respondent.

Before MARIS, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

An issue concerning the distinction between fines or assessments and periodic dues is presented in this petition by the National Labor Relations Board, filed pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160 (e), seeking enforcement of its order requiring respondent union to cease and desist from certain alleged unfair labor

practices under Sections 8(b) (1) (A) and 8(b) (2) of the Act, 29 U.S.C.A. §§ 158(b) (1) (A) and 158(b) (2).

The facts are uncomplicated and free from dispute. At all times pertinent to this petition, the employer and union were engaged in operations under a master agreement containing the familiar union-shop provisions permissible under Section 8(a) (3) of the Act, 29 U.S.C.A. § 158(a) (3). The union's bylaws had formerly provided that the dues of "beneficiary" members would be four dollars a month and the dues of "non-beneficiary" members would be three dollars a month. All dues were payable on the last day of each month, and if not paid by that date, a one-dollar assessment would be charged. The bylaws further provided that failure to pay delinquent dues together with the one-dollar assessment by the fifteenth day of the following month would result in discharge. The Board had occasion to rule on the validity of this procedure in The Great Atlantic and Pacific Tea Co., 1954, 110 N.L.R.B. 918. In previous cases, the Board had held that unions could not enforce the collection of fines unrelated to "periodic dues" through the medium of an existing union-security contract. Westinghouse Electric Corp., 1951, 96 N.L.R.B. 522, enforced *sub nom.* N. L. R. B. v. International Association of Machinists, Local 504, 9 Cir., 1953, 203 F.2d 173 (fine for engaging in dual unionism); The Electric Auto-Lite Co., 1950, 92 N.L.R.B. 1073, enforced 6 Cir., 196 F.2d 500, cert. denied, 1952, 344 U.S. 823, 73 S.Ct. 23, 97 L.Ed. 641 (failure to attend union meetings); The Eclipse Lumber Co., 1951, 95 N.L.R.B. 464, enforced 9 Cir., 1952, 199 F.2d 684 (refusal to picket). In the A. & P. case, which also involved the present union, the Board broadened this rule to render invalid the invoking of the union security clause to enforce the assessment levied for failure to pay periodic dues on the assigned date. By holding that the assessment of one dollar did not technically qualify as "periodic dues" within the purview of Sections 8 (a) (3) and 8(b) (2) because it was "intermittently imposed" and by its "very nature not 'periodic,'" the Board reversed the finding of the trial examiner that the assessment was valid as "part of the dues structure."

After the decision in the A. & P. case, the union amended its bylaws to increase its monthly dues by one dollar, but allowed a one-dollar discount if the dues were paid on or before the last day of the month. The amendment also provided that "Failure of the member to take advantage of the discount provided herein is not to be construed or is not intended as a fine, assessment or penalty." It further provided discharge for those members who did not pay the gross amount of their dues by the fifteenth day of the following month. The Board affirmed the finding of the trial examiner that this amendment was not promulgated as a subterfuge to evade the holding of the A. & P. case, but rather as a good faith endeavor to conform to the technical requirements of Sections 8(a) (3) and 8(b) (2) as enunciated in that decision of the Board.

Marie Ruston, a member of respondent union, failed to pay her dues for February, 1955. Pursuant to its usual practice, the union notified the company, and when Ruston's dues were not paid by March 15, 1955, she was thereafter discharged. General counsel of the National Labor Relations Board filed a complaint against respondent union based upon Ruston's charges. The trial examiner found that the procedure employed by the union was equivalent to that proscribed by the Board in the A. & P. case, and more specifically, that the union violated Section 8(b) (1) (A) by making payment of the dues without the discount a condition of employment, and further violated Sections 8(b) (1) (A) and 8(b) (2) by causing Ruston's discharge under this condemned arrangement. The Board majority affirmed the findings of the trial examiner on the basis that the union's discount procedure produced the same results as its former assessment scheme, and issued an order requiring the respondent to cease and desist from

demanding sums equivalent to fines or assessments as a condition of employment. Two Board members dissented vigorously, pointing out that the union's "discount procedure plainly contemplates an entirely different concept and approach than does a fine; the one involving a reward and the other a penalty."

■ It is an unfair labor practice under the Act for a labor organization to cause an employer "to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership." 29 U.S.C.A. § 158(b) (2). Thus, the Act permits a labor organization to invoke its union-security contract so as to make continued membership and employment contingent upon payment of "periodic dues" which are "uniformly required." Can the respondent union's discount plan, which on its face contemplates merely the payment of periodic dues uniformly required, be reasonably interpreted to impose a fine or assessment? We think not.

■ What the union has done is simply to make the amount of dues contingent upon the date of payment. Members may pay before the last day of the month and take advantage of a one-dol-lar discount. They may exercise their option to pay within the next fifteen days at the full amount. The plan affects every member of the union, and the option comes into play every month. There is no question that a union may lawfully increase its monthly dues by one dollar. The majority of the Board concluded, however, that the extra dollar was an assessment because the respondent did not attempt to justify the increase as a revenue-producing measure. We think this was placing an improper burden upon respondent, for by increasing its dues it was merely exercising the right expressly given to it under the Act of prescribing its own rules concerning the acquisition or retention of its membership. 29 U.S.C.A. § 158(b) (1) (A). At all times the burden was upon the Board to show that the increase did not represent dues. A review of the entire record finds it barren of evidence to support this burden. In fact, the record contains affirmative evidence that respondent's discount procedure was intended not as a punishment, but rather as a real inducement and reward for the prompt payment of monthly dues.

■ The Board majority placed significance upon the fact that the discount was disproportionately large when compared with the relatively smaller discounts prevalent in the commercial world.[1] We think, however, that the size

---

1. The dissenting members of the Board cogently reasoned:

"Specifically, there is no legal basis whatsoever in the circumstances here, for the majority to require as it has, that the Respondent *show* that the institution of its discount procedure was particularly motivated by a need for additional revenue, or by the same reasons which, the majority presumes, motivate discount practices prevailing 'in the business world,' or by any such standards artificially erected by the majority. The Respondent's position that its discount procedure was not designed as a punishment, but as a reward and inducement for prompt payment of the regular monthly dues is uncontroverted in the actual evidence. It seems to us that the subjective value to a union in so inducing prompt payment of dues may be very great indeed; that this is uniquely true because it is in the field of union and labor relations. The union might reasonably anticipate, among other things, that such a practice would keep dues delinquency at a minimum, and thereby not only eliminate a valuable amount of effort, time, and expense otherwise required to pursue delinquents, but more importantly, by less frequent invocation of the union-security clause in the contract, avoid unpopularity with the membership and with the employer, as well the risks of technical illegality, engendered by enforced discharges of employees. The practical effect of such a procedure may well be a diminution of industrial strife, an objective which is fundamental in the Act. In any case, there is certainly no exercise here of union-shop power in a field forbidden by

of the discount is discretionary with the union, provided it is not so unreasonable as to be patently an assessment.

 We conclude that the procedure adopted by the union adequately satisfies the technical requirements of Section 8 (b) (2). The payments provided for were clearly "periodic dues" which were "uniformly required" and the grant of a discount, together with a determination of its amount, was a proper exercise of "the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C.A. § 158(b) (1) (A).

The petition seeking enforcement of the order of the Board will be denied.

the Act, nor any act of the Respondent which runs counter to the Act's purposes. As the respondent's discount procedure is unquestionably valid on its face, and especially as it is found that this procedure was not designed in any way as a subterfuge,—the law does not impose a *prima facic* burden on the Respondent to explain or justify its procedure, as our colleagues require. It appears to us that our colleagues have undertaken here to substitute their judgment for that of the Respondent concerning an internal union matter * * *." Bakery and Confectionery Workers International Union of America, 1956, 115 N.L.R.B. 1542, 1548–1549.