264 F.2d 21
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
GENERAL DRIVERS, CHAUFFEURS AND HELPERS, LOCAL UNION NO. 886, AFFILIATED WITH INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, Respondent.
 No. 5943.
 United States Court of Appeals Tenth Circuit.
 February 20, 1959.
 
 Louis Schwartz, Washington, D. C. (Jerome D. Fenton, Thomas J. McDermott, Marcel Mallet-Prevost, Owsley Vose and Melvin Pollack, Washington, D. C., on the brief), for petitioner.
 Frank Grayson, Oklahoma City, Okl., for respondent.
 Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 This is a proceedings under Section 10(e) of the Labor Management Relations Act, 61 Stat. 136, 147; 29 U.S.C.A. § 160(e), to enforce an order of the National Labor Relations Board, based upon a finding that the respondent violated Section 8(b) (1) (A); 29 U.S.C.A. § 158(b) (1) (A) of the Act, by coercively withholding contractual benefits from certain of the complainant's employees until about 80 per cent of them signed union membership applications and dues checkoff authorizations. The order required the respondent to reimburse the employees for the dues checked off during the critical period involved here.
 
 
 2
 The ultimate findings are derived from these facts. In February 1956, the respondent Union became the exclusive bargaining representative for the complaining company's production and maintenance employees. After a series of bargaining conferences between the Union representative and management, the parties tentatively agreed upon a contract providing for a 7¢ per hour increase. The contract thus agreed upon was drafted by the company and submitted to the Union representative on June 7, 1956, and the company thereafter stood ready to sign the same "any time". On the same date, about 40 of the company's employees met to consider the contract. There is a sharp conflict concerning the attitude of the Union representative, but the Board found from conflicting evidence that the Union representative told the assembled employees that the 7¢ increase would not become effective until the contract was signed, and that the contract would not be signed until about 80 per cent of the employees signed union membership applications and checkoff dues authorizations; that the employees then voted to accept the Company's proposal "on condition that it was satisfactory to the Contract Committee and to the Union." On July 20, about 62 of the 83 employees had joined the Union and signed dues checkoff authorization. The Chairman of the Employees Committee thereupon notified the Union representative that the contract was satisfactory, and on the same day the Union representative and the company formally executed the contract and inserted the effective date (July 20, 1956). The dues checkoff authorizations, as executed by the employees from June 7 to July 20, were duly submitted and honored by the company.
 
 
 3
 From this the Board concluded that the employees' action in joining the Union and executing the dues checkoff authorizations was not voluntary, but the direct result of respondent's coercive conduct; and that it was reasonably calculated to restrain and coerce the employees in the exercise of their right under Section 7 of the Act to refrain from joining or assisting the respondent Union.
 
 
 4
 The respondent insists that the Union representative's condemned remarks at the employees meeting were made as agent of the Employees Contract Committee, and not of the Union, and furthermore, having voted for the Union as its bargaining representative, it is "inconceivable" that the employees would have to be coerced to join it and sign checkoff cards; and that in any event, since the contract had not been executed when the remarks were made, they could not be construed as a threat to deprive the employees of any benefits thereunder, i. e., there could be no contractual benefits from a nonexisting contract. But the Trial Examiner reasoned that since the respondent was the exclusive bargaining agent with the statutory responsibility of negotiating and executing a contract with the company on behalf of the employees, the Union remained responsible for its agent's conduct although he may have followed the counsel and advice of the Employees Contract Committee. And furthermore, even if the employees were not actually coerced to sign the dues checkoff authorizations, the remarks of the Union representative were calculated to do so and that is enough to constitute an unfair labor practice.
 
 
 5
 In his recommendations for affirmative action to effectuate the policies of the Act, the Trial Examiner did not think reimbursement of the checkoff dues would serve any remedial purpose. And, the respondent says it would be no less than punitive to require it. The Examiner thought the dues reimbursement would be justified only if it provided the only means by which the effects of the unfair labor practice could be expunged; that such action had been heretofore taken in only two types of cases, namely, in "closed shop or other illegal situation" and where "employer-dominated and assisted unions had been thrust upon the employees." N. L. R. B. v. Parker Bros. & Co., 5 Cir., 209 F.2d 278; N. L. R. B. v. Eclipse Lumber Co., 9 Cir., 199 F.2d 684; N. L. R. B. v. Shedd-Brown Mfg. Co., 7 Cir., 213 F.2d 163.
 
 
 6
 But the Board took a different view of the effects of and the remedy for the unfair labor practice. Having concluded that the execution of the checkoff authorizations was the "direct result of respondent's coercive conduct", the Board thought the appropriate remedy was reimbursement of the dues. It did not believe subjective evidence necessary to warrant the order.
 
 
 7
 "The relation of remedy to policy is peculiarly a matter for administrative competence." Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271; N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 290, 97 L.Ed. 377. It is the primary responsibility of the Board to fashion an appropriate remedy for an unfair labor practice in order to effectuate the purposes of the Act, and we should not interfere with the designed remedy unless we can say from the whole record that it is "oppressive and therefore not calculated to effectuate a policy of the Act." N. L. R. B. v. Seven-Up Bottling Co., supra; Virginia Electric & Power Co. v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568.
 
 
 8
 The reimbursement of initiation fees and dues as an appropriate remedy cannot be doubted. N. L. R. B. v. Local 404, etc., 1 Cir., 205 F.2d 99, 104. And, this is so even though the employees who were coerced to pay the dues may have received some value therefor in the form of Union services. Id. The remedial order "may be designed to make someone whole who has been deprived of a recognized interest by acts that constitute a violation of the Act and/or the order may be designed to prevent the violator from benefiting by his misdeed." N. L. R. B. v. Coats & Clark, Inc., 5 Cir., 241 F.2d 556, 561.
 
 
 9
 In our case, it is reasonable to conclude from the evidence that the contractual benefits were withheld pending the signing of the membership application and the dues checkoff authorization. And, it does not avail the respondent to say that no such result was intended by the Union. True, no one came to say that he was coerced to join the Union or sign the dues checkoff authorizations, but subjective evidence of this kind is not essential to a permissible inference. It is sufficient if the result is the foreseeable consequence of Union conduct. Radio Officers Union, etc. v. N. L. R. B., 347 U.S. 17, 44, 74 S.Ct. 323, 98 L.Ed. 455. The Union dominated the bargaining process from the very inception; it negotiated the contract; the Union's agent was the spokesman at the meeting of the employees; and, it was undoubtedly the beneficiary of the delay. We think it is fairly inferable that the decision not to execute the contract until about 80 per cent of the employees had joined the Union and signed dues checkoff authorizations was actuated by the respondent Union; that it was unlawfully coercive, and we are unable to say that the remedy the Board has fashioned is wholly inappropriate for the effectuation of the policies of the Act. The order will be enforced.