**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SPECTOR FREIGHT SYSTEM, INC., et al., Respondents.**

**No. 16291.**

United States Court of Appeals Eighth Circuit.

Jan. 5, 1960.

Melvin Pollack, Atty., N. L. R. B., Washington, D. C., for petitioner.

Norman W. Armbruster, St. Louis, Mo., for respondent Local 600, Highway & Freight Drivers, etc.

Harvey M. Fisher, St. Louis, Mo., for respondent, Spector Freight System, Inc.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160 (e) [hereinafter referred to as "Act"], the National Labor Relations Board [hereinafter called "Board"], petitions for enforcement of its order against re-spondent Spector Freight System, Inc. [hereinafter called "Company"], and re-spondent Local 600, Highway & City Freight Drivers, Dockmen & Helpers [hereinafter called "Union"]. The Com-pany and Union have cross-petitioned for review of the Board's order pursuant to § 10(f) of the Act, 29 U.S.C.A. § 160(f). The Board's decision and order are re-ported at 123 N.L.R.B. No. 3. See also, CCH N.L.R.B. Decisions, 1958–1959, ¶56,088.

The Board's action resulted from charges brought by Paul H. Conrad to the effect that certain acts of respond-ents, culminating in his discharge by Company, at the request of Union, con-stituted unfair labor practices in viola-tion of the Act. Union alleged that Conrad's discharge was lawfully demand-ed pursuant to its union-security agree-ment with Company, and Company con-tended that it acted in good faith in dis-charging Conrad, pursuant to lawful de-mand made under said security agree-ment.

The pertinent facts, as found by the trial examiner, and adopted by the Board, are as follows:

Paul Conrad, who had been a member of Union for a number of years, was employed by Company as an over-the-road driver on November 6, 1957. He was unemployed during October. When Conrad was hired by Company he ex-ecuted a check-off card which authorized Company to deduct $5 from Conrad's pay as dues, and remit that amount to Union on a monthly basis. Conrad did not pay dues directly to Union in November and December, and no dues were deducted from his pay for those two months. On December 31, 1957, in accordance with Union's constitution and bylaws, an en-try was made on Conrad's account card, suspending him for nonpayment of dues for three months, the last entry of dues payment having been made in September, 1957. By draft and covering letter of January 2, 1958, Company, in accordance with its quarterly practice, remitted to Union, for Conrad, among other em-ployees, $15 as quarterly dues for the

months of January, February and March, 1958. On January 6, Union made three entries on Conrad's account card, each entry showing dues payment of $5; the entries did not allocate the payments to any particular month as did prior entries on the card. On January 8, John J. Lloyd, Company Supervisor, informed Conrad that an officer of Union wanted to see him, and that Conrad could not go out on a trip until he had cleared with Union. Later that day Conrad had a conference with Patrick M. Neary, secretary-treasurer of Union, at the latter's office, at which time Neary took the position that in accordance with the by-laws, Conrad owed dues at the rate of $6 per month, instead of $5, for either two or three months. Neary further insisted that Conrad also owed a reinstatement fee of $60 because of his suspension for failure to pay dues for October, November and December. Neary informed Conrad that the least Union would accept was $72—a reinstatement fee of $60 plus dues for November and December at the rate of $6 for each month. Conrad took the position that he was not obligated to pay the reinstatement fee and was not liable for dues for October because he was unemployed during that month. At the close of this meeting, Neary informed Lloyd by telephone that Conrad could remain on the job; that there was some discrepancy, but he was certain the matter could be worked out. Conrad returned to the job, but made no further payment to Union.

By letter to the Company dated January 30, 1958, Union requested Conrad's discharge for failure to comply with the union-security provision of Union's contract with Company.[1] Union's president also informed the labor relations director of Company that Conrad's discharge was requested because of his failure to pay dues for October, November and December, 1957. Conrad was discharged on February 3, 1958. Thereafter, and within a few days, Union refunded the $15 to Conrad which was the amount the Company had deducted from his pay and remitted to Union.

From the foregoing facts, the Board concluded that Union's insistence upon Conrad's discharge was unlawfully predicated upon his nonpayment of the October pre-hire dues, and that Company "was fully apprised that the discharge was demanded for this reason." Accordingly, the Board concluded that Company and Union had violated §§ 8(a) (3), 8 (a) (1), and 8(b) (2), 8(b) (1) (A), respectively, by discharging Conrad for failure to pay dues for October, 1957, during which time he was not employed by Company.

Additionally, the Board concluded that even if it be assumed that Conrad's discharge was not predicated upon his failure to pay October dues, but because he failed to pay the reinstatement fee of $60, as urged by Union, Conrad's termination of employment was a violation of §§ 8(b) (1) (A), 8(b) (2), 8(a) (3) and 8(a) (1), this for the reason that the fee which Union sought to exact resulted from computation of dues for a period during which Conrad was under no statutory obligation to pay such dues in order to retain his job. On this issue, the trial examiner found that such demand for the reinstatement fee constituted restraint and coercion by *Union*, only, in violation of § 8(b) (1) (A) of the Act. By finding such demand to be a violation of § 8(a) (3) and § 8(a) (1), it is apparent that the Board concluded that, by discharging Conrad for non-payment of the reinstatement fee, based unlawfully upon a pre-hire arrearage, the Company also had violated the Act.

In addition, the Board also adopted the trial examiner's finding and conclusion that Union violated § 8(b) (1) (A) of the Act by threatening Conrad with loss of employment if he did not pay November and December dues at the rate of $6 rather than $5 per month, the additional $1 constituting a penalty or fine.

---

1. This contract required that all employees must become and remain "members in good standing" of Union as a condition of employment.

The Board's order now before us, provided that, as to Company, it should cease and desist from encouraging membership in Union by discharging any of its employees or discriminating in any other manner in regard to their hire or tenure, except as authorized by § 8(a) (3) of the Act; or from restraining its employees in the exercise of the rights guaranteed in § 7 of the Act. As to Union, the order required it to cease and desist from causing or attempting to cause Company to discriminate against its employees in violation of § 8(a) (3); from threatening to enforce any provisions of its constitution or bylaws in such a way as to condition employment upon payment of assessments or fines for nonpayment of periodic dues, or to condition employment upon payment of a reinstatement fee predicated upon a pre-hire arrearage, in violation of § 8(b) (1) (A) of the Act; or to restrain its members in the exercise of rights guaranteed by § 7 of the Act. In addition, the order required that Union take affirmative action by notifying Company that it withdraws objections to Conrad's employment, and by requesting that Company offer him immediate reinstatement; that Company offer reinstatement to Conrad; that Union and Company, jointly and severally, make Conrad whole; and that Company and Union post appropriate notices.

■■ The National Labor Relations Act provides that employers and unions may enter into agreements whereby membership in a union may be required as a condition of continued employment. Section 8(a) (3). Labor organizations enjoy the right to prescribe their own rules for acquisition or retention of membership. Section 8(b) (1). However, it is further provided that non-membership or loss of membership, as grounds for dismissal, may only be founded upon failure of the employee to tender "the periodic dues and the initiation fees uniformly required as a condition of membership."[2] As stated by the Supreme Court in Radio Officers Union of Commercial Telegraphers Union, A.F.L. v. N. L. R. B., 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455, "The policy of the Act is to insulate employees' jobs from their organizational rights."

2. Section 7 of the Act, 29 U.S.C.A. § 157, while guaranteeing employees' rights to organize, bargain collectively, etc., further provides that employees "shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment * * *"

Section 8(a) (3), 29 U.S.C.A. § 158(a) (3), authorizes employers to enter into agreements whereby membership in a union, within a 30-day period after employment, may be made a condition of such employment, but no discrimination against an employee for non-membership in a labor organization may be justified if the employer "has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

Section 8(b), 29 U.S.C.A. § 158(b) provides:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) To restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 [§ 7] of this title; Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * * or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

It has been held by the Board that, when properly founded, a union may validly demand a reinstatement fee. See Local 173, 121 N.L.R.B. 170; International Association of Machinists, 120 N.L.R.B. 1223, and compare N.L.R.B. v. International Ass'n of Machinists, Local No. 504, 9 Cir., 203 F.2d 173 (right to re-instatement unlawfully conditioned upon payment of pre-existing fine).

"The right to membership lies with the union alone, but the right to a job is surrounded by safeguards which limit a union's acts." Murphy's Motor Freight, Inc., 113 N.L.R.B. 524, 534, enforced, N. L. R. B. v. Murphy's Motor Freight, Inc., 3 Cir., 231 F.2d 654.

Thus the internal rules of a labor organization, designed to control its members, such as imposition of fines for failure to attend meetings, special assessments, and other penalties, not being "periodic dues," may not be enforced by the union by a threat of loss of employment. See Radio Officers Union v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (loss of seniority for late payment of dues; suspension for noncompliance with union's hiring rules); Westinghouse Electric Corp., 96 N.L.R.B. 522, enforced, N. L. R. B. v. International Ass'n of Machinists, etc., 9 Cir., 203 F.2d 173 (fine for dual unionism); The Electric Auto-Lite Company, 92 N.L.R.B. 1073, enforced, N. L. R. B. v. Electric Auto-Lite Company, 6 Cir., 196 F.2d 500, certiorari denied, 344 U.S. 823, 73 S.Ct. 23, 97 L.Ed. 641 (failure to attend meetings); N. L. R. B. v. Eclipse Lumber Co., 9 Cir., 199 F.2d 684, 36 A.L.R.2d 625 (refusal to picket); The Great Atlantic & Pacific Tea Co., 110 N.L.R.B. 918 (dues delinquency); Union Starch & Refining Co. v. N. L. R. B., 7 Cir., 186 F.2d 1008, 27 A.L.R.2d 629, certiorari denied, 342 U.S. 815, 72 S.Ct. 30, 96 L. Ed. 617 (refusal to take loyalty oath and attend meetings); N. L. R. B. v. Philadelphia Iron Wks., 3 Cir., 211 F.2d 937 (enforcement of hiring rules).

■ The Board's finding that Conrad's termination was founded upon an unlawful demand for pre-hire dues, as a condition of employment, has ample support in fact and law. Prior decisions have held that payment of dues or other debts accruing prior to existence of a union-security agreement, or prior to employment, may not be required as a condition to continued employment. Failure to pay "periodic dues" does not go "so far as to make lawful the discharge of an employee for failure to liquidate a debt incurred for union dues before the employment in question began." National Labor Relations Board v. Murphy's Motor Freight, Inc. 3 Cir., 231 F.2d 654, at page 655, and cf. N. L. R. B. v. International Ass'n, of Machinists, 9 Cir., 203 F.2d 173 (failure to pay pre-existing fine); N. L. R. B. v. International Union, United Automobile, Aircraft, etc., 7 Cir., 194 F.2d 698, and Local 140, etc., 109 N.L.R.B. 326 (loss of good standing as grounds for dismissal unlawfully based upon dues accruing before security agreement).

■ While Company and Union do not expressly concede that the failure of Conrad to pay dues for October, a pre-hire month, would not constitute a legal basis for terminating his employment, this concession is clearly implicit in their respective briefs. In essence, their position is that there was no substantial evidence to support a finding that Conrad's discharge was occasioned by his failure to pay dues for October, November and December. In so contending, respondents overlook the stipulation they entered into at the hearing, wherein it was agreed that Company discharged Conrad pursuant to the letter from Union's secretary-treasurer, "after William J. Lemon, labor relations director of respondent company, was told by respondent union's president Grogan *that Conrad's discharge was requested for failure to pay October, November and December, 1957 dues.*" Moreover, in so far as Company is concerned, its Mr. Lloyd testified that he had no reason to believe that Union was requesting Conrad's discharge "for anything other than nonpayment of delinquent dues for the months of October, November, and December." In view of the foregoing, and other pertinent facts and circumstances which have been carefully considered, it seems clear to us that the Company's liability was properly based upon a finding that it had "reasonable grounds" for believing that Union had requested Conrad's discharge for reasons other than his failure to tender the periodic dues

uniformly required, and that its discharge of Conrad constituted a violation of §§ 8(a) (3), 8(a) (1).

■ We are also of the opinion that *Union* did not have the right under the Act to condition Conrad's continued employment upon payment of the reinstatement fee of $60. In this connection, we observe that § 36 of Union's bylaws provides that "(a)ny member delinquent three (3) months or more must pay a Sixty ($60.00) Dollar reinstatement fee * * *." Thus, it appears that the reinstatement fee was predicated upon dues delinquency for three months—here, that period had to be October, November and December, meaning that the $60 fee resulted from the inclusion in the delinquency period of a month for which Conrad was under no statutory obligation to pay dues. We cannot sanction this procedure, because obviously it would permit a union to do indirectly what it recognizes it is prohibited from doing directly. As stated by the Board in Local 140, etc., 109 N.L.R.B. 326, at p. 328, "In both instances, the employees are penalized for not paying dues at a time when they were legally privileged to refuse to do so without jeopardizing their jobs." But there is no basis for the Board's finding that Union's conduct with respect to the reinstatement fee also constituted a violation by Company of §§ 8(a) (3) and 8(a) (1). The record does not demonstrate that Company was requested to discharge Conrad because of his failure to pay the *reinstatement fee*—indeed we find nothing to indicate that Company was aware that this fee had been demanded. Neither is there proof that Company was cognizant of Union's bylaw No. 36. However, this erroneous finding by the Board does not invalidate its order against Company, which finds support on the ground hereinabove discussed.

This brings us to the issue of whether Union violated the Act by threatening Conrad with loss of employment if he did not pay delinquent dues at the rate of $6 rather than $5 per month. The Board insists that the extra $1 demanded for late payment was not a part of the "periodic dues * * * uniformly required as a condition of acquiring or retaining membership," § 8(b) (2), and that therefore Union could not invoke the sanctions of the union security agreement against Conrad in the event he failed to pay the dues at the increased rate. It is said that the additional $1 imposed upon delinquent members is tantamount to a fine or assessment for failure to pay dues on time, and that such increased payments are intermittently imposed and by their very nature not periodic.

■ Union presents a two-pronged contention. First, that there was no substantial evidence that it threatened Conrad with loss of employment if he failed to pay dues for November and December. Secondly, that the additional $1 does not constitute an assessment or fine, but as stated in the bylaw, is in reality dues; that the effect of the bylaw is to grant members an option of saving $1 by paying dues before the first of the month. Union argues this issue is settled by N. L. R. B. v. Bakery & Confectionery Wkrs., 3 Cir., 245 F.2d 211. The first contention is clearly without merit. There was substantial evidence to support the Board's finding that Conrad's job was threatened and placed in jeopardy by Union because he would not accede to its request to pay dues at the increased rate.

■ It is now firmly settled that payment of assessments, penalties or fines cannot be made a condition of continued employment. Such items do not fall within the category of "periodic dues" within the meaning of the Act, and their imposition restrains and coerces employees in the exercise of their rights under § 7 of the Act [to refrain from any and all union activities except membership required under a union security agreement], contrary to § 8(b) (1) (A). See cases cited, at page 276 of 273 F.2d.

The Union bylaw fixing the dues provides: "The dues for this Local Union shall be not less than five ($5.00) Dollars per month and shall be paid on or before the first day of the current month. Dues paid after the first of the month shall be six ($6.00) Dollars." The constitution of International Brotherhood of Teamsters, Chauffeurs, etc. with which Union is affiliated, provides with respect to payment of dues: "All members paying dues to local unions must pay them on or before the first business day of the current month, in advance. Any member failing to pay his dues at such time shall not be in good standing." In determining the real purpose of the additional $1 required of late paying members only, we look through form to substance. So viewing the situation, we cannot escape the conclusion that the additional amount is in reality in the nature of a penalty, imposed because of failure to pay during the current month. By fixing the dues to be paid currently at $5 per month Union unquestionably determined that this amount would produce ample operating revenue, so it can scarcely be argued that the $1 is designed to increase revenue required for normal union operations. Further, it is apparent that the additional $1, not being collected monthly as a matter of course, is by its nature not a periodic payment, collected as such in a normal dues structure. This is readily apparent from Conrad's union dues card, an exhibit in the record.

In N. L. R. B. v. Bakery & Confectionery Wkrs., 3 Cir., 245 F.2d 211, relied upon by Union, the bylaws fixing dues were couched in terms of allowing a discount from the stated monthly dues figure, if payment was made before the last day of the month in which dues were payable. The Third Circuit viewed this structure as affording the member an option to receive a benefit and the member's failure to take advantage of the discount could in no way be deemed as an assessment of a penalty.[3] Inasmuch as the Union bylaw here involved is in our opinion distinguishable and is in no way designed to afford optional benefits to its members, it is unnecessary to consider the persuasion of N. L. R. B. v. Bakery & Confectionery Wkrs. etc., supra.

■ Union's insistence upon payment of dues for November and December, at an increased rate, thereby threatening Conrad with loss of good standing and employment, constituted a violation of § 8(b) (1) (A) of the Act.

■ We have conscientiously searched the record in its entirety, according to our responsibility upon review, as outlined by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456, and we are satisfied that the findings and conclusions of the Board are supported by substantial evidence, when viewed on the record as a whole, and that its order is proper and entitled to enforcement.

The petitions to set aside the order will be denied and a decree for the enforcement of the order will be entered. It is so ordered.

---

3. But see The Electric Auto-Lite Company, 92 N.L.R.B. 1073, enforced, N.L.R.B. v. Electric Auto-Lite Company, 6 Cir., 196 F.2d 500, where monthly dues were increased from $1.50 to $2, with a provision that members who attended each monthly meeting would be entitled to a 50¢ exemption. Upon other evidence, the Board concluded: "regardless of the means adopted to institute this charge, the necessary and intended effect was to fix a penalty upon those members who did not attend the monthly meetings. We cannot consider such a charge, with the conditions attached, as regular monthly dues. In our opinion, it is nothing other than a fine." 92 N.L.R.B. at p. 1074.

It is possible that a "discount" system of fixing dues would be open to abuse, inasmuch as dues could be set at higher figures, with discounts allowed for compliance with various internal rules of the union, thus indirectly accomplishing forceable collection of fines or performance of union duties.