NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HERSHEY FOODS CORPORATION,

and

Teamsters, Chauffeurs, Warehousemen & Helpers Union No. 386, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Respondents, Lloyd Brewer, Intervenor.

No. 74–2114.

United States Court of Appeals, Ninth Circuit.

April 15, 1975.

Elliott Moore, Deputy Assoc. Gen. Counsel, NLRB, Joseph E. Mayer, Atty., William R. Stewart, Atty. (argued), Washington, D. C., for petitioner.

**1084**

Duane B. Beeson, San Francisco, Cal. (argued), for respondent.

George J. Tichy, II, San Francisco, for intervenor.

## OPINION

Before CARTER, WRIGHT and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

The National Labor Relations Board brought this action to enforce its orders against Teamsters, Chauffeurs, Warehousemen & Helpers Union Number 386 (Union) and Hershey Foods Corporation (Company). The Board found that the Union and Company had committed unfair labor practices by, respectively, causing the discharge of and discharging Lloyd Brewer for reasons other than his failure to tender dues and initiation fees. The sole question is whether, under a valid union security agreement requiring union membership as a condition of employment, an employee who tenders the dues and fees uniformly required of members, but refuses to become a full-fledged member, is protected from discharge. We enforce the order of the Board.

The facts are undisputed. The collective bargaining agreement provided for a union shop requiring all employees to become members of the Union as a condition of employment. When that agreement expired, the Union struck. Brewer resigned from the Union and continued to work. In his letter of resignation he assured the Union that he intended to "continue to pay tender [sic] an amount equal to the established dues as may be required by a [subsequent] labor agreement between Hershey Foods Corporation and Teamsters Local 386." When the strike ended and a new collective bargaining agreement was signed, Brewer mailed the Union a cashier's check in an amount equal to his dues. The Union responded that the bargaining agreement contained no provision for payment of a service charge by one who resigned and thus the check would not be accepted unless Brewer rescinded his letter of resignation and directed that the check be credited against his dues. Brewer replied that his only obligation under the National Labor Relations Act was "to tender the periodic dues," and that there was "no requirement that [he] must join the labor organization, or be bound by its internal policies." The Union returned Brewer's check, stating that the union security clause in the collective bargaining agreement required "union membership as a condition of employment, and the obligation to pay initiation fees and dues in our view means that employees must, by paying such sums, be willing to be union members." Thereafter, the Union wrote to the Company demanding that Brewer be discharged for lack of union membership. Several months later, after events not relevant to this action, the Company terminated Brewer's employment.

The National Labor Relations Act grants employees not only the right to organize and form labor organizations, but "the right to refrain from any or all of such activities." National Labor Relations Act § 7, 29 U.S.C. § 157. This right is limited by section 8(a)(3) of the Act which sanctions, under certain circumstances, collective bargaining agreements requiring "membership" in a labor organization as a condition of employment. 29 U.S.C. § 158(a)(3). Section 8(a)(3) further provides, however:

> [N]o employer shall justify any discrimination against an employee for nonmembership in a labor organization . . . if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership . . . .

29 U.S.C. § 158(a)(3). Section 8(b)(2) similarly forbids a labor union

> to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organiza-

tion has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership . . . .

29 U.S.C. § 158(b)(2).

■ In the present case, the Board asserts that "membership" in the union, for purposes of subsections 8(a)(3) and 8(b)(2), means only the obligation to pay dues and initiation fees uniformly required. Because Brewer tendered his dues, the Board found the Union and Company guilty of unfair labor practices. The Union and Company, on the other hand, contend that "membership" in the union means full-fledged membership. Brewer's membership in the Union was neither denied nor terminated, they argue, and thus the discharge was proper. This controversy over the meaning of "membership" is more than a semantic debate. A full union member is subject to union-imposed disciplinary measures enforceable in state courts.[1] NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 182–84, 196–97, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).

The form of union security agreement permitted in section 8(a)(3) was a compromise between those who sought to outlaw all compulsory unionism and those who sought to maintain the legality of the closed shop. The compromise did not sanction union hiring and firing, a much-abused characteristic of the closed shop. On the other hand, it was designed to eliminate "free riders"—those who would get the benefit of higher wages and better working conditions without the burden of union dues. NLRB v. General Motors Corp., 373 U.S. 734, 740–41, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); Radio Officers' Union v. NLRB, 347 U.S. 17, 40–41, 74 S.Ct. 323, 98 L.Ed. 455 (1954). The Union and Company argue that the compromise validated "union shops," a term of art generally requiring full union membership as a condition of employment. The legislative history of the 1947 amendments, however, shows that the union shops permitted by the compromise were burdened by many restrictions and can be described better as "in the nature of union shops and maintenance of membership." H.R.Rep.No.245, 80th Cong., 1st Sess. 30 (1947), 1 Leg.Hist. of the LMRA 321 (1948).[2]

■ Relying upon the legislative history, courts have narrowly construed the provisions of section 8(a)(3): " 'Membership' as a condition of employment is whittled down to its financial core." NLRB v. General Motors Corp., supra, 373 U.S. at 742, 83 S.Ct. at 1459. Thus, soon after the 1947 amendments to the Act, the Seventh Circuit affirmed a Board determination that a union could not seek discharge of employees for any reason other than failure to tender the periodic dues and initiation fees. Union Starch & Refining Co. v. NLRB, 186 F.2d 1008, 1012–13 (7th Cir.), cert. denied, 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed.

1. The NLRB administrative law judge who first heard this case found that "Respondent Union sought Brewer's consent to become a member, presumably because it wished to impose upon him the full obligations of union membership." He also stated: "Presumably it was to avoid just this sort of thing that Brewer resigned from Respondent Union in the first place." Accord, Buckley v. American Fed'n of Television and Radio Artists, 496 F.2d 305, 312–13 n.5, 314 (2d Cir. 1974) (dictum), cert. denied, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974); see NLRB v. Textile Workers, 409 U.S. 213, 215–18, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972); Scofield v. NLRB, 394 U.S. 423, 428–30, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969).

2. Membership in a union under the House version of section 8(a)(3) was so limited that one congressman complained:

This seems an elaborate, expensive, and dishonest method of dealing with the problem. . . . Why pretend we are letting the unions have maintenance of membership and union shop? . . . This bill pretends to allow a requirement of membership but really allows only a requirement that dues be paid. Why do not they say what they mean?

93 Cong.Rec. 3557 (1947), 1 Leg.Hist. of the LMRA 654–55 (1948) (remarks of Congressman Klein); accord, e. g., H.Min.Rep.No.245, 80th Cong., 1st Sess. 80–81 (1947), 1 Leg.Hist. of the LMRA 371–72 (1948).

617 (1951). In *Union Starch*, the employees had tendered dues and an initiation fee but were denied membership in the union for refusal to file union application forms, attend a union meeting or take the union oath. As the Board in *Union Starch* reasoned:

> Throughout the amendment to the Act, Congress evinced a strong concern for protecting the individual employee in a right to refrain from union activity and to keep his job even in a union shop. Congress carefully limited the sphere of permissible union security, and even in that limited sphere accorded the union no power to effect the discharge of nonmembers except to protect itself against "free riders."

Union Starch & Refining Co., 87 NLRB 779, 784–85 (1949) (footnotes omitted); *accord* Marlin Rockwell Corp., 114 NLRB 553, 559–60 (1955).

The federal courts of appeals have uniformly upheld the NLRB's construction of sections 8(a)(3) and 8(b)(2) in *Union Starch*. Boilermakers Local No. 749 v. NLRB, 151 U.S.App.D.C. 172, 466 F.2d 343, 344–45 (D.C.Cir. 1972), cert. denied, 410 U.S. 926, 93 S.Ct. 1356, 35 L.Ed.2d 586 (1973); NLRB v. Zoe Chem. Co., 406 F.2d 574, 579 (2d Cir. 1969); NLRB v. Spector Freight System, Inc., 273 F.2d 272, 275–76 (8th Cir.), cert. denied, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); NLRB v. Broderick Wood Prod. Co., 261 F.2d 548, 558 (10th Cir. 1958) (alternate holding); J. A. Utley Co. v. NLRB, 217 F.2d 885, 886 (6th Cir. 1954); NLRB v. Pape Broadcasting Co., 217 F.2d 197, 199–200 (5th Cir. 1954); NLRB v. Philadelphia Iron Works, Inc., 211 F.2d 937, 941, 943 (3d Cir. 1954). So too has the Supreme Court read the sections as requiring, at the most, "financial core" membership in the union as a condition of employment. NLRB v. General Motors Corp., *supra*, 373 U.S. at 742, 83 S.Ct. 1453, 10 L.Ed.2d 670.[3] In addition, we have approved the *Union Starch* rule in NLRB v. Technicolor Motion Picture Corp., 248 F.2d 348 (9th Cir. 1957):

> Even where, as in the instant case, all the statutory requirements of a valid union shop agreement are met, the Act provides that the only ground upon which an employee can be lawfully discharged is for non-payment of initiation fees or periodic dues. Nothing else suffices. . . . If the employee pays his fees and dues he is protected from discharge.

*Id.* at 352 (citations omitted). Brewer tendered his fees and dues; he is thus protected from discharge.

The Company and Union attempt to distinguish the *Union Starch* line of cases because Brewer did not seek full union membership. As the District of Columbia Circuit recently said, however, "we think it irrelevant whether the employee did or did not desire membership in the Union." Boilermakers Local No. 749 v. NLRB, *supra*, 466 F.2d at 344–45 n. 1. Taking an oath and signing a

---

**3.** In *General Motors* the Court stated:

> [T]he 1947 amendments not only abolished the closed shop but also made significant alterations in the meaning of "membership" for the purposes of union-security contracts. Under the second proviso to § 8(a)(3), the burdens of membership upon which employment may be conditioned are expressly limited to the payment of initiation fees and monthly dues. It is permissible to condition employment upon membership, but membership, insofar as it has significance to employment rights, may in turn be conditioned only upon payment of fees and dues. "Membership" as a condition of employment is whittled down to its financial core.
>
> . . . .
>
> . . . If an employee in a union shop unit refuses to respect any union-imposed obligations other than the duty to pay dues and fees, and membership in the union is therefore denied or terminated, the condition of "membership" for § 8(a)(3) purposes is nevertheless satisfied and the employee may not be discharged for nonmembership even though he is not a formal member. Of course, if the union chooses to extend membership even though the employee will meet only the minimum financial burden, and refuses to support or "join" the union in any other affirmative way, the employee may have to become a "member" under a union shop contract, in the sense that the union may be able to place him on its rolls.

373 U.S. at 742–44, 83 S.Ct. at 1460 (footnotes omitted).

membership card are preliminary steps to full union membership. If a union cannot demand the preliminaries, it cannot demand the ultimate step.

The Union, of course, still has the right to prescribe its own rules for acquisition or retention of full membership. 29 U.S.C. § 158(b)(1)(A). But the employee need not become a full-fledged member of the Union to be protected from discharge. So long as an employee tenders fees uniformly required of union members, he is a "member" for purposes of sections 8(a)(3) and 8(b)(2). The Board's petition for enforcement of its order is granted.

Enforced.