**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMERICAN COACH COMPANY, Respondent.**

**No. 9197.**

United States Court of Appeals Tenth Circuit.

June 13, 1967.

**700**

Marsha Swiss, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Attorney, N. L.R.B., on the brief), for petitioner.

William G. Haynes, Topeka, Kan. (Lillard Eidson, Lewis & Porter, O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., Charles N. Henson, Peter F. Caldwell, R. Austin Nothern, Roscoe E. Long, and Brock R. Snyder, Topeka, Kan., on the brief), for respondent.

Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The National Labor Relations Board held[1] that the respondent American Coach Company violated § 8(a) (1)[2] of the National Labor Relations Act by the promulgation and enforcement of no-solicitation and no-distribution rules. The Board further held that the respondent had violated § 8(a) (3)[3] by the discriminatory discharge of employee Zimmerman. An appropriate cease and desist order was entered and Zimmerman was required to be reinstated with back pay. The Board now petitions for enforcement of its order.

The Company, a subsidiary of Detroiter Mobile Homes, manufactures and sells mobile homes at its Newton, Kansas, plant. In 1964, District 50, United Mine Workers of America affiliate of The United Mine Workers of America, tried to organize the employees of the Company, but lost the subsequent election. Zimmerman was active in organizational work for the Union and was a union observer during the election. On September 2, 1965, the Company issued and distributed to its employees an "Employee Policy Manual" for the Newton plant. Article XVI thereof read in part:

"DISCIPLINE AND DISCHARGE

Employees are entitled to retain their jobs on the basis of good behavior, efficiency and honesty. Any employee

---

1. The decision and order of the Board are reported at 158 N.L.R.B. No. 47.

2. 29 U.S.C. § 158(a) (1).

3. 29 U.S.C. § 158(a) (3).

who fails to meet the foregoing conditions may be discharged after receiving one written warning. However, any of the following, by way of example, shall be considered grounds for immediate dismissal:

\* \* \* \* \* \*

18. Distribution of unauthorized literature on Company property.

19. Solicitation of other employees for any unauthorized cause on Company property.

\* \* \* \* \* \*

It is also understood that there are other conditions which will satisfy discharge and the Company will judge any offense in the light of the actual happening."

On September 3, during the regular lunch hour, Zimmerman went to the table on the shipping and receiving dock where employees customarily ate and joined a group of seven other employees. Included in the group was a leadman named Woelk. Zimmerman displayed the manual, compared its terms unfavorably with those of a union contract of the Company at another plant, voiced the opinion that if the union had won the election the employees would have been better off, and criticized the no-distribution and no-solicitation rules as made to "scare" or "bluff' the employees. He left seven union authorization cards on the table when he departed. Shortly thereafter, Woelk complained to the plant superintendent that Zimmerman had "rowed up" his crew. The superintendent then discharged Zimmerman, saying among other things that he had violated Rules 18 and 19 by passing out the cards. The separation notice said that Zimmerman was discharged because of "violation of company policy."

Company rules forbidding solicitation and distribution have been the subject of much discussion in both Court and Board decisions.[4] The Company says that its rules are proper because they are not aimed at union activities but rather are aimed at interference with production by the solicitation of contributions. Its evidence is that the rule was first promulgated in its Alma, Michigan, plant in 1956 because of church and fraternal solicitations on company property during company time. When the Company took over the Newton plant in 1963, the rules were extended to it. No showing is made of any special circumstances at Newton which justified the application of the rules.

■ In National Labor Relations Board v. Shawnee Industries, Inc., 10 Cir., 333 F.2d 221, 225, we held that the adoption of a no-solicitation, no-distribution rule was not of itself a violation of § 8(a) (1). In that situation there was not only a special circumstance, solicitation of contributions, but also "no evidence that the rules were ever used to interfere with any union or any organizational activities." Here we have no special circumstance, but we do have the use of the rules to interfere with the protected activities of employees during non-working time in non-working areas. The protected activities involved here were union solicitation and the distribution of union authorization cards. In our opinion, the record establishes interference with the rights granted by § 7[5] and sustains the Board's holding that the Company violated § 8(a) (1).

■ The Company not only argues that the discharge was without any anti-union motivation but also argues that it was justified by the demoralizing effect

---

4. See Republic Aviation Corp. v. National Labor Relations Board, 324 U.S. 793, 803–805, 65 S.Ct. 982, 89 L.Ed. 1372; Brewton Fashions, Inc. v. National Labor Relations Board, 5 Cir., 361 F.2d 8, 16–17, cert. denied 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75; Jas. H. Matthews & Co. v. National Labor Relations Board, 8 Cir., 354 F.2d 432, 441, cert. denied 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015;

National Labor Relations Board v. Miller, 2 Cir., 341 F.2d 870, 873–874; Walton Manufacturing Co., 126 N.L.R.B. 697, order enforced; National Labor Relations Board v. Walton Manufacturing Co., 5 Cir., 289 F.2d 177; and Stoddard-Quirk Manufacturing Co., 138 N.L.R.B. 615, 616–617.

5. 29 U.S.C. § 157.

on employees of Zimmerman's attack on the manual. We are not impressed with the Company's disclaimer of knowledge of Zimmerman's efforts on behalf of the union. The only evidence of demoralization was Woelk's statement that his crew was "rowed up." In any event, the plant superintendent gave as one reason for the discharge the violation of the no-solicitation and no-distribution rules during the lunch hour at the lunch table. Both the solicitation and distribution were to encourage the unionization of the plant—a permissible activity in the circumstances presented. When the record is viewed as a whole it supports the reasonable inference that the discharge resulted from union activities. Such a discriminatory discharge violates § 8(a)(3).

The order of the Board will be enforced.