**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**CENTRAL MACHINE & TOOL COMPANY, Inc., Respondent.**

**No. 543–69.**

United States Court of Appeals, Tenth Circuit.

July 15, 1970.

---

John I. Taylor, Atty., N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Ronald Greenberg, Atty., N.L.R.B., Washington, D. C., on the brief) for petitioner.

Frank Carter, Enid, Okl. (Stephen Jones, Enid, Okl., on the brief) for respondent.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

The National Labor Relations Board is before this Court seeking enforcement of its decision and order of August 19, 1968, against Central Machine & Tool Company, Inc. The Company was found to have engaged in unfair labor practices within the meaning of section 8(a) (3) and (1) and section 8(a) (5) of the Act and to have failed to bargain in good faith as defined in section 8(d). With only slight modification, the findings and conclusions of the trial examiner were adopted by the Board and, pursuant to section 10(c) of the Act, it ordered the enforcement of the examiner's recommended order. The alleged unfair labor practices occurred in Enid, Oklahoma. We have jurisdiction to enforce the order under 29 U.S.C. § 160(e).

It is undisputed that a local of the International Association of Machinists and Aerospace Workers was elected and certified on May 3, 1967, as the collective bargaining representative of a unit comprising all production and maintenance employees, including truck drivers and regular part-time employees at Central Machine and Tool Company. The complaint alleged, and the trial examiner found, that the Company refused to bargain by (1) negotiating throughout in bad faith; (2) dilatorily failing and refusing to meet at reasonable times; (3) unilaterally granting wage increases to unit employees on or about May 28, 1967, and again on January 12, 1968, while purporting to negotiate wages with the Union; (4) unilaterally withdrawing a quarterly bonus to unit employees on July 6, 1967; (5) refusing the Union's request for information regarding the unilateral wage increases; and (6) conditioning the Union's right to call a strike as the last step in the grievance procedure upon "the issue [being] fairly presented to the membership of the bargaining unit after due notice, and more than 50 per cent of the members of the Bargaining Unit authorizes [sic] the strike."

The trial examiner also found that the Company constructively discharged a pro-union employee by "starving him out;" that is, by deliberately failing to provide him with work because of his known pro-union activities and sympathies.

■ As the parties recognize, the question is one of substantial evidence. Our review is limited to searching the record to see if there is substantial evidence to support the fact findings. 29 U.S.C. § 160(e). We do not sit as a super trial examiner, and do not weigh the credibility of one witness against another nor do we search for contradictory inferences.[1] Notwithstanding the conflicting testimony throughout this record and the divergent opinions connected therewith, we are satisfied that, on the whole, the record is ample to support the findings made by the examiner and accepted by the Board.

■ The Company has questioned the propriety of the finding which states that they have violated section 8(a) (5) of the Act by insisting on the "ballot" clause. The trial examiner premised his finding of a section 8(a) (5) violation upon NLRB v. Wooster Division of Borg-Warner Corporation, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). One of the questions in that case was whether a "ballot" clause, similar to the one proposed here, was within the scope of mandatory bargaining. The Court answered in the negative, holding that insisting on its inclusion to the point of impasse was an unfair labor practice since it was tantamount to a refusal to bargain on "mandatory" subjects.

Basically, the Company now argues that Mr. Justice Harlan's dissent in Borg-Warner ought to control the disposition of the instant controversy. Despite the merit of that rationale, it cannot be gainsaid that it does not represent the governing rule of law under which we must decide this case. The trial examiner and the Board properly relied on the Borg-Warner case.

During oral argument the Company contended that the Board's order was too broad in ordering execution of the contract agreed to by both parties, minus the "ballot" clause. The Board responded that this was a new argument that could not be raised before this court. By a subsequent motion, the Company points to an earlier objection of record which does make reference to the order being too broad. However, the rather general objection and the argument now posed are without merit.

■ Borg-Warner upheld the authority of the Board to require a party to sign a contract, the terms of which have been agreed to, except for a clause upon which a party has no right to insist. That case supports the authority of the Board to adopt the recommended order here which requires the Company, at the Union's option, to execute the agreement offered by the Company but omitting the objectionable "ballot" clause.

H. K. Porter Company, Inc. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970) decides a wholly different issue. Certiorari was there granted to consider whether the Board, in those circumstances, had the power to remedy predetermined unfair labor practices by requiring the Company to agree to check off dues. The conclusion was that, in that unique situation, the Board could not compel a company or a union to agree to any substantive contractual provision of a collective bargaining agreement.

That decision does not impinge on the vitality of the Borg-Warner rule. The Board's authority to require a party to sign a contract, agreed upon except as to nonmandatory bargaining subjects, may not be equated with an absence of power to affirmatively impose substantive contractual provisions as a remedy to predetermined unfair labor practices. Likewise, the H. K. Porter case does not appear to withdraw the Board's authority to determine whether a section 8(a) (5) violation has occurred by a company's insistence upon including a nonmandato-

---

1. NLRB v. Thompson Transport Co., Inc., 421 F.2d 154 (10th Cir. 1970); Pacific Intermountain Express Co. v. NLRB, 412 F.2d 1 (10th Cir. 1969);

Cain's Coffee Co. v. NLRB, 404 F.2d 1172 (10th Cir. 1968); NLRB v. St. Clair Lime Co., 315 F.2d 224 (10th Cir. 1963).

ry bargaining subject to a point of impasse.

The motion for transmission to the court of an additional portion of the record is denied and enforcement of the order of the NLRB is hereby granted.