**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MONTGOMERY WARD & CO., INCORPORATED, Respondent.**

**No. 76–1020.**

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 24, 1977.

Decided April 12, 1977.

---

Corinna Lothar Metcalf, Washington, D. C. (John D. Burgoyne, John S. Irving, Jr., John E. Higgins, Jr., and Elliott Moore, N. L. R. B., Washington, D. C., on the brief), attys. and counsel, for petitioner.

Christopher J. Michas, Chicago, Ill. (Mark C. Curran, Chicago, Ill., on the brief), and Sidley & Austin, Chicago, Ill., of counsel, for respondent.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

The National Labor Relations Board (Board) seeks enforcement of its order[1]

---

1. Issued September 16, 1975, in 220 N.L.R.B. No. 69.

against Montgomery Ward and Co., Incorporated (Wards), requiring Wards to cease and desist from unfair labor practices and directing Wards to bargain with the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC (Union).

Wards operates a repair service facility in Oklahoma City, Oklahoma. On November 14, 1973, the Regional Personnel Manager for Wards sent a memorandum to the Repair Service Manager, Don McNutt (McNutt), directing: a wage survey to determine what Ward's competition was offering; whether adjustments in the wages Wards was paying were in order; that if wage adjustments were to be made they should be based upon time and service and performance; and that wage adjustments should be accomplished by March 1, 1974, to be granted in two one-month installments. McNutt announced thereafter at a November meeting of technicians that they would receive a wage increase by the end of 1973.

On January 18, 1974, McNutt submitted his recommended wage increases. On February 7, 1974, sixteen technicians from Wards repair facility attended a Union meeting, where a Union representative told the technicians that organizing a union would be difficult; that earlier attempts had proven fruitless; and that even if the employees won an election, it would probably be necessary for them to strike in order to get a contract. Twelve employees signed a set of cards (an authorization card, a membership card and a checkoff card) that evening. The following day McNutt denied Union's request for recognition, and Wards posted a no solicitation policy. Four days later, McNutt announced the wage increases which he stated had been effective since January 31. On February 15, the Assistant Service Manager informed an employee that talking about the Union would cost him his job and he cautioned him against it. On February 20, McNutt convened a meeting of technicians, a number of whom were displaying Union stickers on their uniforms, equipment, trucks and toolboxes. McNutt warned the technicians against further display of such stickers on company uniforms or property.

On April 26, an election was held. The Union was defeated by a vote of 17 to 12. On that election day, 16 out of the 31 employees in the unit held a set of Union cards. On May 3, the Union filed objections to the election. On May 8, Walter Cockrell (Cockrell), an employee actively engaged in Union activities, was fired.

The Board found: (1) that Wards had violated § 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C.A. § 158, by its no-solicitation rule, the ban on Union stickers, and by its wage increases; (2) that Wards violated § 8(a)(3) and (1) of the NLRA by firing Cockrell and; (3) that a bargaining order was the appropriate remedy because a majority of the employees were members of the Union and the unfair labor practices precluded a fair election. Wards challenges the validity of those findings.

In *N.L.R.B. v. Central Machine and Tool Company*, 429 F.2d 1127 (10th Cir. 1970), *cert. denied,* 401 U.S. 909, 91 S.Ct. 870, 27 L.Ed.2d 807 (1971), we stated the standard of our review:

> . . . Our review is limited to searching the record to see if there is substantial evidence to support the fact findings. 29 U.S.C. § 160(e). We do not sit as a super trial examiner, and do not weigh the credibility of one witness against another nor do we search for contradictory inferences . . .

429 F.2d at 1129.

*See also: N.L.R.B. v. Dover Corporation, Norris Division,* 535 F.2d 1205 (10th Cir. 1976), U.S. Appeal Pending; *N.L.R.B. v. Okla-Inn,* 488 F.2d 498 (10th Cir. 1973); *N.L.R.B. v. Gold Spot Dairy, Inc.,* 417 F.2d 761 (10th Cir. 1969).

### I.

Wards contends that it did not violate the NLRA by its non-solicitation rule or its ban on Union stickers, and that the wage increases were permissible.

### (a)

The same day that the Union first requested recognition, Wards posted a rule against solicitation or distribution. One week later, the assistant service manager told an employee that under the non-solicitation rule talking about the Union on company time would cost him his job.

■ The substantive validity of Ward's rule is not questioned, inasmuch as a non-solicitation rule which regulates employee activity during working hours is presumptively valid. *Republic Aviation Corp. v. N.L.R.B.,* 324 U.S. 793, 803–805, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *N.L.R.B. v. American Coach Company,* 379 F.2d 699, 701 (10th Cir. 1967).

■ We hold, however, that the record establishes interference with the rights granted by § 7 of the NLRA, and sustains the Board's finding that Wards violated § 8(a)(1). The rule was promulgated within hours after Wards became aware of Union activity. The rule was not posted nor enforced before the Union requested representation; however, after the Union's demand was made, the rule was strictly enforced. This is indicative of Wards' attempt to interfere with Union organizational activities by the promulgation of the inhibiting non-solicitation rule.

### (b)

On February 20, McNutt put into effect a ban on the wearing of Union insignia.

■ The rule in determining the validity of such a ban is set forth in *Serv-Air, Inc. v. N.L.R.B.,* 395 F.2d 557 (10th Cir. 1968), *cert. denied,* 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968):

> The right to wear union insignia on the employer's premises during working hours is guaranteed by § 7 in the absence of special consideration.
>
> 395 F.2d at 563.

■ Wards alleges that the special consideration, i.e., that some of its employees come into contact with the public, justifies the ban. We hold that this is not a suffi-cient justification inasmuch as the ban applied to employees who did not come into contact with the public, thus rendering the ban invalid.

■ Wards also contends that there is no showing that the ban was employed to interfere with organizational activities and was, accordingly, valid. The Board need only show interference with organizational activities when solicitation is involved. The wearing of Union insignia is a form of expression protected by § 7, and not a form of solicitation. *Serv-Air, Inc. v. N.L.R.B., supra.* Since solicitation is not involved, the ban is invalid.

### (c)

■ The Board found that Wards' wage increases interfered with, restrained and coerced the employees in violation of § 8(a)(1) of the NLRA, *supra.* Wards contends that the wage increases were decided upon before the advent of Union and were not in response to Union's efforts.

As previously noted, McNutt was directed to undertake a wage survey in November, 1973. He announced to the employees that they would receive a wage increase. On January 18, 1974, McNutt submitted his proposed pay increases, which were approved on February 5. Four days after the Union requested recognition, the wage increases were announced as planned.

The Board found that the wage increases violated § 8(a)(1), in that the totality of circumstances, including the nature and timing, indicate that the wage increases were not validly implemented.

The Board found that the wage increases did not conform to the amounts suggested by the memorandum directing the survey nor did they conform to McNutt's criteria. Employees who had achieved the highest grade and who had achieved working seniority, received the same amount or lower wages than those employees in lower grades and with less seniority. In addition, the wage increases became effective via a one-time increase, even though the memorandum dictated that they should be accom-

plished by two one-month increases. This nonconformity suggests that Union interference was intended in lieu of valid wage increases.

The announcement of the grant of the wage increases four days after the Union's request for recognition suggests interference with organizational efforts. The increases could have been announced as early as January 18 or as late as March 1. Further, the Board did not find an innocent explanation for the retroactive grant of the increases to date of January 31. This action likewise suggests Union interference.

In consideration of the above facts and findings, we hold that *Crown Tar and Chemical Works, Inc. v. N.L.R.B.*, 365 F.2d 588 (10th Cir., 1966), controls:

> If Crown had put its wage increase into effect in May of 1964, when the decision to raise wages was made, the picture here would be altogether different. It waited until the organizational effort was underway and then, while in a position to refrain from granting the increase, and with knowledge of union's activity and perhaps with knowledge of the union's claim to represent a majority, the increase was made effective. The granting of economic benefits by the unilateral action of an employer while union organizational efforts are underway, or while a representation election is pending, is a violation of Sections 8(a)(1) and 8(a)(5) of the Act, 29 U.S.C.A. §§ 158(a)(1), (a)(5). It follows that the employer must bargain with the Union.

365 F.2d at 590.

*Accord: N.L.R.B. v. Tonkawa Refining Company*, 434 F.2d 1041 (10th Cir. 1970); *American Sanitary Products Co. v. N.L.R.B.*, 382 F.2d 53 (10th Cir. 1967); *N.L.R.B. v. Albuquerque Phoenix Express*, 368 F.2d 451 (10th Cir. 1966).

Wards should have postponed its announcement when it became aware of the Union's activities. Wards did not grant the wage increases in conformity with its plans. We hold that the Board's finding that the wage increases were granted in violation of § 8(a)(1) is not clearly erroneous.

## II.

The Board found that Wards discharged Walter Cockrell because of his union sympathies and union activities. Wards contends that Cockrell was discharged for legitimate considerations unrelated to his union activities.

Cockrell had worked for Wards for nine years. At one time, he had held the position of assistant service manager. No customer complaints had been lodged against Cockrell, until the complaint given as a reason by Wards for the instant discharge. Cockrell was a union activist in 1968. He was then one of the main organizers for the International Brotherhood of Electrical Workers drive. He sat on the negotiating board in bargaining sessions for that Union. Cockrell assisted in securing signatures of employees for the International Union of Electrical, Radio and Machine Workers. He wore a Union button at the February 20 meeting with McNutt, and he was the only Union witness at the March 21 representation hearing with Wards.

The events leading to Cockrell's termination were as follows: at a meeting in March, the Oklahoma Repair Service Coordinator stated that Wards was going to get "some of the troublemakers out"; the N.L.R.B. interpreted this to mean that Wards was going to fire Cockrell; in April, McNutt told an employee that ". . . I'm going to have a lot more trouble off my shoulders just pretty soon, and you know who I mean . . ." which the Board interpreted to mean that Cockrell was to be fired; after the election a customer complaint was filed against Cockrell, the first ever lodged against Cockrell and that, contrary to his usual practice, McNutt had the customer sign a statement verifying the complaint incident. On May 8, five days after the Union had filed objections to the election, McNutt sent the assistant service manager and Cockrell to obtain Cockrell's tools from his truck. Before discussing the customer complaint with Cockrell, McNutt called in a security guard, contrary to normal procedure. While McNutt was reading

the customer complaint, Cockrell insisted on interrupting him until McNutt said that if Cockrell continued to interrupt " . . . I have no choice but to terminate you." Cockrell answered that he thought " . . that is what has been on our mind," and McNutt discharged him. Later that day, McNutt told an employee that the decision to fire Cockrell came from Kansas City.

The discharge of employees who are actively engaged in union affairs gives rise to an inference of violative discrimination. *N.L.R.B. v. Automotive Controls Corporation,* 406 F.2d 221 (10th Cir. 1969); *Cain's Coffee Company v. N.L.R.B.,* 404 F.2d 1172 (10th Cir. 1968); *American Sanitary Products Co. v. N.L.R.B., supra.* Discrimination is generally proven by circumstantial evidence. *S. A. Healy Company v. N.L.R.B.,* 435 F.2d 314 (10th Cir. 1970); *Betts Baking Co. v. N.L.R.B.,* 380 F.2d 199 (10th Cir. 1967). If there is substantial evidence, i.e., evidence furnishing a substantial basis from which the disputed facts can be inferred as derived from the record as a whole, the Board's findings should be upheld. *N.L.R.B. v. Okla-Inn, supra.* Discrimination need be but a partial motive for a discharge in order to be violative. *S. A. Healy Company v. N.L.R.B., supra; N.L. R.B. v. Automotive Controls Corporation, supra; Betts Baking Co. v. N.L.R.B., supra.* Discrimination can be a motive only if it is shown that the employer knew that the discharged employee was active in the union. *Cannady v. N.L.R.B.,* 466 F.2d 583 (10th Cir. 1972).

Wards knew that Cockrell was active on behalf of the union in view of his past union activities and his testimony at the representation meeting. The degree of significance to be credited to Wards' explanation for dismissal will, finally, on balance, determine the issue. *N.L.R.B. v. Automotive Controls Corporation, supra.* Wards claims that Cockrell's insubordination was the reason for his discharge. The Board found that because the decision to fire Cockrell came from "Kansas City," and because Cockrell was asked to remove his tools from his truck before the confronta-

tion which resulted in the insubordination charge that Wards intended to fire Cockrell for his union participation and not his insubordination. We agree that Wards' explanation was weak. Cockrell's work record was excellent. The discharge procedures applied in Cockrell's case were not consistent with the usual practices. And, significantly, the discharge occurred only five days after the Union filed objections. Timing is an important factor in determining the validity of an inference of discrimination. *N.L.R.B. v. Sequoyah Mills, Inc.,* 409 F.2d 606 (10th Cir. 1969); *N.L.R.B. v. Automotive Controls Corporation, supra.* We hold that this inference of discrimination has substantial support in the record and therefore approve the order of his reinstatement.

### III.

To remedy the unfair labor practices, the Board imposed a bargaining order whereby Wards must bargain in good faith with the Union. Wards argues that the bargaining order should not be enforced because the Union lacked a majority of cardholders and the Board failed to explain why a fair rerun election is not practicable.

*N.L.R.B. v. Gissel Packing Co., Inc.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), *rehearing denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969) holds that the Board can issue a bargaining order if, in its discretion, it finds the unfair labor practices were so "pervasive" and "outrageous" that a bargaining order is the only remedy because "their coercive effects cannot be eliminated by the application of traditional remedies with the result that a fair election cannot be held." Even should the unfair labor practices be not serious enough to demand a bargaining order, still such an order may be proper if the Union had a majority of cardholders at one point, and if the Board finds that the possibility of insuring a fair election is slight and that employee sentiment would be better protected by a bargaining order. *Gissel, supra.* The Board is vested with authority to reach this determination because of its expertise.

Any such determination should not be reversed unless the Board fails to show any evidence in support thereof. *Gissel, supra; N.L.R.B. v. Wylie Manufacturing Company,* 417 F.2d 192 (10th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 915, 25 L.Ed.2d 94 (1970).

### (a)

Wards challenges the bargaining order because it contends that the Union lacked a majority. The Board found that 16 of the 31 employees in the unit held authorization cards. Wards alleges that the card of employee Huckaby was invalid because Huckaby thought the card was for the sole purpose of holding an election and because his eyesight was so poor he could read only part of the card. If Huckaby's card is held to be invalid, the Union then lacks a majority and the bargaining order could not stand.

 The test for determining the validity of the card is set forth in *Gissel, supra* :

. . . , we think it sufficient to point out that employees should be bound by the clear language of what they sign unless that language is deliberately and clearly canceled by a union adherent with words calculated to direct the signer to disregard and forget the language above his signature.

395 U.S. at 606, 89 S.Ct. at 1936.

 When the record is examined to judge whether the Board's decision finds substantial support, the following facts sustain the Board's conclusion: Huckaby signed three cards—an authorization card, a membership card, and a dues card—in the presence of a Union representative. The cards state on their face that the holder authorizes the I.U.E. to collectively bargain for him. Huckaby's vision is impaired. His eyesight was so poor that he could read only "part of the cards." However, the cards state on their face that they are authorization cards for the Union. And the Union representative who solicited Huckaby's signature testified that he told Huckaby that the cards were authorization cards for the Union, thus reaffirming, rather than negat-

ing, the language on the cards. Huckaby testified that he thought the cards were only for election purposes. The Board determines a conflict in testimony and weighs credibility. We cannot disturb that determination, absent clear error. *N.L.R.B. v. Central Machine and Tool Company, supra; N.L.R.B. v. Dover Corp., Norris Division, supra; N.L.R.B. v. Gold Spot Dairy, Inc., supra.* We must hold that Huckaby's card was valid and that a majority of the employees held authorization cards.

### (b)

Wards would have the Board state a more detailed analysis for the bargaining order. From a review of the Board's order, we hold that its analysis is sufficient.

 Wards granted violative wage increases; it promulgated a violative non-solicitation rule and threat; it enforced an illegal ban on wearing Union insignia; and it discriminatorily discharged a Union leader. Accordingly, each of the 31 employees were affected by the unfair labor practices. Furthermore, because the unfair labor practices were so numerous and because they continued even after Wards lost the election, the Board properly found (a) that the atmosphere was such that the possibility of insuring a fair election is slight, and (b) because the majority of the employees held authorization cards, the bargaining order is proper. *N.L.R.B. v. Okla-Inn, supra.*

 A bargaining order does present the danger of disenfranchising a majority of employees, especially where the majority of employees carrying cards is slight, as it is here. We accordingly hold that the Board's order should be modified to include a provision giving notice to the employees advising them of their right to petition for a new election as provided by 29 U.S.C.A. § 159(c)(1)(A). *Cf. N.L.R.B. v. Drives, Incorporated,* 440 F.2d 354 (7th Cir. 1971), *cert. denied,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971); *N.L.R.B. v. Priced-Less Discount Foods, Inc.,* 405 F.2d 67 (6th Cir. 1968).

We direct enforcement of the Board's cease and desist order against Wards and the directive that Wards bargain with Union, subject to the notice modification as above set forth.