**WORLEY MILLS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–2135.

United States Court of Appeals, Tenth Circuit.

July 29, 1982.

Rehearing Denied Oct. 14, 1982.

Nicholas J. Noeding, Poole, Tinnin & Martin, Albuquerque, N. M. (Richard D. Yeomans, Poole, Tinnin & Martin, Albuquerque, N. M., with him on the brief), for petitioner.

John P. Coyle, Atty., N.L.R.B., Washington, D. C. (Howard E. Perlstein, Atty., N.L.R.B., Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., with him on the brief), for respondent.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The petitioner, Worley Mills, Inc., seeks review of the Board's determination that petitioner violated § 8(a)(5) and (a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (a)(5). The Board has cross-petitioned for enforcement of its order. The Board's order is reported at 252 NLRB No. 109.

Worley Mills is a New Mexico corporation in the business of grain storage and the manufacture and sale of livestock feed. The plant at issue in this case is located in Clovis, New Mexico. On July 3, 1979 the International Brotherhood of Teamsters,

Chauffeurs, Warehousemen and Helpers of America, Local Union No. 492 (the Union) filed a petition with the Board seeking a representation election at Worley Mills' New Mexico plant. The election was held on September 7 and 8 of 1979 pursuant to a Stipulation for Certification Upon Consent Election. The unit for collective bargaining was stipulated to by the parties to include mill production and maintenance employees, truck drivers and elevator employees. Upon tabulation of the vote, the Union was deemed to be successful, twenty-eight votes to twenty-three.

Worley Mills filed objections to the election, and upon investigation, the Regional Director ordered a formal hearing. Subsequently, the Board's Hearing Officer recommended that petitioner's objections be overruled and the Union be certified as bargaining representative for the stipulated bargaining unit. Petitioner filed exceptions to the Hearing Officer's report; however, the Board adopted the Hearing Officer's finding, certifying the Union on April 10, 1980.

To challenge the validity of the certification, Worley Mills refused to bargain. The Regional Director filed a complaint against petitioner for violation of § 8(a)(5) and (a)(1) of the Act.[1] On September 30, 1980 the Board granted the General Counsel's motion for summary judgment finding petitioner in violation. The Board found no evidence presented that was not before it in the representation case that would justify a re-examination of its previous decision. Worley Mills was ordered to bargain with the Union as the exclusive representative of the stipulated bargaining unit.

Petitioner's complaints are 1) the pre-election conduct at its plant should void the Union's certification. Worley Mills argues that three supervisors, Martinez, Baldwin and Gates involved themselves in campaigning for the Union. 2) The election should be set aside because of electioneering activities in the immediate vicinity of the polls during the voting period in violation of the Board's rule in Milchem, Inc., 170 NLRB 362 (1968). 3) An atmosphere of fear and coercion was present at the time of the election. Its effect was to interfere with the employees' freedom of choice in the representation election.

We are, of course, limited in the review of factual questions which were considered by the Board. We are unable to reevaluate the evidence when conflicting views have been presented and the Board has chosen a version which is adequately supported by the evidence. *Kustom Electronics, Inc. v. NLRB*, 590 F.2d 817, 821 (10th Cir. 1978). Indeed, we must search the record as a whole for substantial evidence in support of the factual findings made by the Board. 29 U.S.C. § 160(e). This is not to say that we weigh the credibility of one witness against another, nor do we search for contradictory inferences. *NLRB v. Montgomery Ward & Co.*, 554 F.2d 996, 999 (10th Cir. 1977); *NLRB v. Central Machine & Tool Co.*, 429 F.2d 1127, 1129 (10th Cir. 1970), *cert. denied*, 401 U.S. 909, 91 S.Ct. 869, 27 L.Ed.2d 807 (1971). But we are not empowered to draw contrary alternative inferences from the record evidence in the face of substantial evidence which supports the Board's determination. *Montgomery Ward, supra.* See, *U. S. Soil Conditions v. NLRB*, 606 F.2d 940, 944 (10th Cir. 1979). Where the facts lend themselves to conflicting inferences this court will not set aside the Board's choice "even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *NLRB v. Automotive Controls Corp.*, 406 F.2d 221, 226 (10th Cir. 1969). See *NLRB v. Okla-Inn*, 488 F.2d 498 (10th Cir. 1973). In the light of these guidelines we review the petitioner's complaints about pre-election conduct in its plant.

## I. *Supervisory Involvement in the Union Campaign.*

■ The three supervisors who participated in the Union campaign, Martinez,

---

1. § 158(a) It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . . .
   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

Gates and Baldwin, were stipulated to by the parties as supervisors under § 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11). The testimony of these supervisors at the hearing was uncontradicted. Martinez's involvement was quite brief. He attended the first two Union meetings, but when notified by management that he was considered a supervisor his Union activities ceased. Gates discussed the Union with one employee and obtained two authorization cards from Martinez. Gates signed one of these and gave the other to the employee he had solicited about the Union. Baldwin attended at least one Union meeting and urged two employees to support the Union. Baldwin did question one of these employees, Macon, about an anti-union petition that Macon had signed. An initial anti-union petition had disappeared from a toolbox that Baldwin had access to; a second petition was then circulated which gained more votes than the first one. Macon testified that Baldwin's attitude toward him changed during the Union organizing and he was less cooperative with Macon's equipment repair requests.

From this testimony the hearing officer and the Board concluded that nothing that had been presented required the election to be set aside. We do not disagree.

■■■■ Supervisory involvement in an election campaign is not per se a reason to invalidate an election. Such pro-union activities are no more than an expression of personal preference. Standing alone they do not taint an otherwise valid election. *NLRB v. Alamo Express, Inc.*, 430 F.2d 1032, 1035 (5th Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 584, 27 L.Ed.2d 633 (1971). Where supervisors exhibit pro-union activity and employees are aware of this the election will be tainted only upon a showing of threats, either expressed or implied, that result in the employees' fear of retaliation. *Fall River Savings Bank v. NLRB*, 649 F.2d 50, 57 (1st Cir. 1981). There must have been created an environment of tension which precluded employees from exercising free choice at the polls. *NLRB v. Zelrich Co.*, 344 F.2d 1011, 1015

(5th Cir. 1965). *See NLRB v. Klingler Electric Corp.*, 656 F.2d 76, 86 (5th Cir. 1981).

The Board, in concluding that the supervisors' actions had a negligible effect on the representation election, was merely drawing permissible inferences from the evidence. A federal agency's conclusions based upon such inferences are not to be overturned on review unless they lack a reasonable basis. *See Radio Officers Union v. NLRB*, 347 U.S. 17, 48–52, 74 S.Ct. 323, 339–41, 98 L.Ed. 455 (1954). We do not see that the Board lacked a reasonable basis for making its decision. If we were to decide this issue de novo our conclusion might differ from the Board's, but we are forbidden from such an independent determination. *See, The Catholic Medical Center v. NLRB*, 620 F.2d 20, 22 (2nd Cir. 1980).

II. *Electioneering in the Vicinity of the Polls and the Milchem Rule*

Petitioner's main attack on the Board's ruling is that the Board failed to follow its own rule set down in Milchem, Inc., 170 NLRB 362 (1968). The Board there adopted the view that any prolonged conversation between a Union agent and an employee or between the employer's agent and an employee, occurring in the polling area is enough to invalidate an election without regard to the content of such remarks. However, isolated or innocuous statements made to an employee are considered to be a de minimis violation. The purpose of the foregoing principle is to enforce the ban against electioneering at the polling place during a representation election. *See e.g.* Star Expansion Industries Corp., 170 NLRB 364 (1968).

Worley Mills contends that the activities of employee Mike Chavez in the vicinity of the polls tainted the election. Chavez was responsible for initially contacting the Union's business agent in Albuquerque, New Mexico, some two hundred and twenty miles from Clovis. He distributed authorization cards to other employees; discussed the benefits of unionizing with the Worley Mills employees, attended all union meetings prior to the election and sat with the Union representative at some of these

meetings. Moreover, Chavez served as translator for the Spanish-speaking employees who attended the Union meetings.

The conduct that petitioner complains of took place on September 7, the first of two days of voting. Five witnesses, including Chavez, testified about his conduct around the polling area on the seventh. There was a period of approximately twenty-five minutes after Chavez voted and before he punched out during which he may have spoken briefly to several employees in the voting line and in the immediate vicinity of that line. The evidence indicated that Chavez may have spoken to four employees. He made rather innocuous comments such as "It's going to be close, we've got to stick together." There was a lack of evidence of violence when the polls were open nor were there any statements made that could be construed as threatening or coercive in any way. Chavez was not told to leave the polling environs by the Board's agent because she felt she had no authority over him since he was not in the immediate voting area.

In analyzing Chavez's conduct, the initial determination made by the Board was that Chavez was not an agent of the Union. The *Milchem* rule creates a per se violation only when *parties* hold some not inconsequential conversation with employees in the voting area. Because the hearing officer and the Board determined that Chavez was not a Union agent and therefore his conduct could not be attributed to the Union, *Milchem* was inapplicable. Chavez's conduct was evaluated by the Board under the lesser standard which applies to third parties: Whether such coercive and disruptive conduct occurred that the election is to be set aside because free choice of representation was impossible. *E.g.* Monroe Auto Equipment Co., 186 NLRB 90, *enforced in*, 470 F.2d 1329 (5th Cir. 1972).

■ The Board's decision on the relevancy of *Milchem* here is not inconsistent with its past treatment of third party electioneering. *E.g.* Southeastern Mills, Inc., 227 NLRB 57 (1976); Glacier Packing Co., 210 NLRB 571 (1974); Sewanee Coal Operators' Ass'n., 146 NLRB 1145 (1964). Once the Board adopts a policy it has no more discretion on that issue and must follow its own rulings until it modifies or abandons its former views. *NLRB v. Horn & Hardart Co.*, 439 F.2d 674, 679 (2nd Cir. 1971). Our job, once the Board's precedent has been reviewed, is to determine if that precedent has been properly applied.

■ The Board's decision that Chavez was not a Union agent is amply supported by the record. The Union did not ask Chavez to electioneer in the polling environs nor were Union representatives aware of his behavior. The Union did not condone or ratify his actions.[2] Chavez did not hold himself out to other employees as a Union agent, a key factor in agency. Pastoor Brothers, Inc., 223 NLRB 451 (1976). We find no reason to hold the Union liable for Chavez's conduct since there was no showing that the Union "instigated, authorized, solicited, ratified, condoned or adopted the employee's actions and statements." *NLRB v. Miramar of California*, 601 F.2d 422, 425 (9th Cir. 1979). A determination of agency is a question of fact, our ability to review this decision is extremely limited. The agent's label can only be applied after examining the totality of the circumstances. No one factor is necessarily determinative. *PPG Industries, Inc. v. NLRB*, 671 F.2d 817, 822 n. 8 (4th Cir. 1982). The Board, through its hearing officer, was in a far better position to evaluate the agency issue than we are. *See NLRB v. Slagle Manufacturing Co.*, 658 F.2d 785 (10th Cir. 1981); *NLRB v. Campbell Products Department*, 623 F.2d 876, 879 (3rd Cir. 1980).

We take note of the fact that there are several decisions in which the conduct of rank-and-file employees has been attributed

---

**2.** We do note, however, that one can be an agent under the National Labor Relations Act

without there being actual authority or subse-

to the union.[3] *E.g., PPG Industries, Inc. v. NLRB*, 671 F.2d 817 (4th Cir. 1982); *NLRB v. Georgetown Dress Corp.*, 537 F.2d 1239 (4th Cir. 1976); *NLRB v. Urban Telephone Co.*, 499 F.2d 239 (7th Cir. 1974). However, the conduct in these cases was far more extreme and disruptive than anything presented by Worley Mills.

In *PPG Industries* an in-plant organizing committee's (IPOC) actions were attributed to the union. IPOC members numbered over three hundred out of the fourteen hundred employees eligible to vote in the plant. IPOC members threatened anti-union employees on five separate occasions with physical harm or property damage. The Union's organizers requested that IPOC members solicit support for the union at the plant and in employees' homes. These organizers requested that the IPOC be the Union's "eyes and ears" during the election campaign. A case of apparent agency was thus made out.

In *Georgetown Dress* the Fourth Circuit treated the IPOC group as Union agents in order to set aside a representation election. The IPOC at the *Georgetown Dress* factory was set up by a professional Union organizer. The Committee was formed as a surrogate for the Union agent who was not familiar with the plant and its conditions. IPOC members were asked to get employees to sign authorization cards, attend meetings and visit fellow employees in their homes. The employees viewed the IPOC as the Union's representative. IPOC members threatened violence and loss of jobs. One IPOC member took notes on what employees were saying about the Union. From all of this the court concluded that there was apparent agency. Because the Union did

not repudiate the misdeeds of the IPOC members, the court attributed the violative conduct to the Union.

The final case on this point, *Urban Telephone*, dealt with attributing the behavior of a "contact man" to the Union. A contact man serves as a volunteer, acting as liaison between the employees and the Union conveying information. This employee, Rodriguez, intimidated numerous employees with physical threats. Rodriguez was a very large man with a reputation for brawling. These employees who testified about their contact with Rodriguez expressed a great deal of fear. The Union organizer at the telephone company heard about threats being made but did not investigate or disavow these actions. The court did not decide that Rodriguez was or was not an agent, nonetheless, under these facts his behavior was attributable to the Union.

■ From a review of the record, we conclude that under the lesser standard for third party electioneering the Board's view that the "atmosphere necessary to the exercise of free choice", *EDS–IDAB, Inc. v. NLRB*, 666 F.2d 971, 975 (5th Cir. 1982), was not disrupted is supported by substantial evidence. The testimony of the employees contacted by Chavez fails to show the kind of coercion or disruption that would invalidate an election. No employee testified to being intimidated into changing his vote. The Board has said that it will not apply its per se electioneering rules regardless of the circumstances. Such conduct must warrant an inference that free choice has been stultified. Boston Insulated Wire and Cable Co., 259 NLRB No. 149 (1982).[4]

---

quent ratification of conduct. 29 U.S.C. § 152(13).

**3.** Petitioner urges upon us the decision in *NLRB v. Carroll Contracting*, 636 F.2d 111 (5th Cir. 1981) where the court appeared to extend the rule in *Milchem* to third party conduct. *See Season-All Industries, Inc. v. NLRB*, 654 F.2d 932, 940 (3rd Cir. 1981). We see no need to extend the Board's *Milchem* precedent. In any case, in narrowly reading *Carroll* we conclude that there the court found conduct disruptive enough so that an election based upon

free choice was not possible. No such cloud upon free choice is present in this case.

**4.** The factors the Board will consider to decide the electioneering question include: 1) whether the conduct occurred near the polling place, 2) the extent and nature of the electioneering, 3) whether it was conducted by a party to the election or by employees, and 4) whether the conduct occurred in a designated "no electioneering" area or contrary to the instructions of the Board's agent. 259 NLRB No. 149.

### III. The Alleged Atmosphere of Threats and Coercion Surrounding the Representation Election.

Petitioner complains that a series of incidents that occurred prior to the representation election so tainted the atmosphere that the election should be set aside and a new one held. *See NLRB v. Urban Telephone Corp.*, 499 F.2d 239 (7th Cir. 1974). The evidence elicited at the hearing indicated that employee Selley attended a Union meeting at the Clovis Hotel. At that meeting he was told in a joking manner not to show up to vote if he was going to vote against the Union. Selley did not express any fear or coercion over this remark. There was testimony that Union agent Farnbach explained to several employees the difference between an open and a closed shop, apparently at this same meeting. Employees Smith and Flaury assumed that Farnbach was saying that if the Union was certified those who did not pay their Union dues would lose their jobs. Smith and Flaury were unaware that a contract has to be negotiated after the Union is certified. Other testimony adduced that Farnbach was not threatening anyone with the loss of their job.

We have already recounted employee Macon's perceived problems with supervisor Baldwin and the missing list of anti-union supporters. The worker who started the first list, Judd, testified that prior to the election he received mysterious phone calls with heavy breathing but no one speaking. Judd's dog was poisoned before the election. There was hearsay testimony that employee Mendoza, a Union supporter, received threatening phone calls. The record, however, is devoid of evidence linking the phone calls and the dog's death to Union agents. None of the employees who testified claimed that they were frightened or had changed their views about the Union because of any of these events.

■ In reviewing the Board's decision on the legitimacy of this election, we note that the NLRB has broad discretion in supervising representation elections. To overturn its determination here and refuse to enforce its bargaining order the record must be devoid of substantial evidence for its position. *See NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *NLRB v. Campbell Products Department*, 623 F.2d 876, 879 (3rd Cir. 1980). A showing of misconduct prior to an election, without more, is insufficient to deny enforcement of the Board's order. Interference with the employees' exercise of free choice must be present in the record to such an extent that an inference can be drawn that the conduct materially affected the election results. *See NLRB v. Gulf State Canners*, 634 F.2d 215 (5th Cir.), *cert. denied*, 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981); *NLRB v. Griffith Oldsmobile, Inc.*, 455 F.2d 867 (8th Cir. 1972).

In analyzing the preelection conduct cited by petitioner, we find it useful to comment upon the factors mentioned by the Third Circuit in *Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d 1000, 1005 (3rd Cir. 1981) in considering the fairness of the representation election. We have examined the number of threats made and their severity; and whether those threatened were put in fear. Whether threats were made close to the election dates and whether reports of threats were widely circulated are factors on our calculus. Threats that can be attributed to Union or management will often tip the balance, for misconduct by those not a party to the election must be more serious to set aside an election. *NLRB v. Belcor, Inc.*, 652 F.2d 856 (9th Cir. 1981). And finally, the closeness of the vote has been considered.

■ Under those factors mentioned in *Zeiglers Refuse Collectors* we find no reason to void the election. The comment made to Selley about not showing up to vote was found to be made in a jocular manner. Such a joking threat, apparently not taken seriously by the recipient and not shown to have intimated him will not upset the election result. *NLRB v. Bostik Division, USM Corp.*, 517 F.2d 971 (6th Cir. 1975).

The perceptions of Smith and Flaury that agent Farnbach was intimidating them and

not explaining the difference between an open and a closed shop ring untrue and are not supported in the record. Similarly, Macon's problems with supervisor Baldwin cannot upset this election for no intimidation of Macon was shown.

As to the phone calls received by Judd and Mendoza, there was no proof set forth that these calls came from Union agents or even Union adherents. Moreover, these telephone calls were not shown to change the vote of the recipients. These phone calls are insufficient evidence to disturb the bargaining order. *Manning, Maxwell & Moore, Inc. v. NLRB*, 324 F.2d 857, 858 (5th Cir. 1963). A small number of isolated threats will not set aside the election. *Beaird-Paulon Division, Emerson Electric Co. v. NLRB*, 649 F.2d 589, 594 (8th Cir. 1981).

The only property damage claimed was the death of Judd's dog. No evidence was presented that this act could be attributed to the Union or its adherents. Moreover, Judd testified that he naturally was angry and hurt over this act, but he was not coerced or intimidated into voting against his convictions. Property damage of this sort is not sufficient to void the representation election where there is no link to the Union or its adherents and where free choice has not been stultified. *Bostik Division, USM Corp., supra.* See 652 F.2d at 860–61.

Finally, the petitioner has failed to sustain its burden that there is no substantial evidence in support of the Board's findings of conduct violative of § 8(a)(1) and (a)(5) of the Act. The bargaining order was properly issued. Worley Mills' petition must be denied. The NLRB's cross-petition for enforcement is granted.