INTERNATIONAL GUARDS UNION
OF AMERICA, LOCAL 69,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Mason & Hanger-Silas Mason Co.,
Inc., Intervenor.

No. 84–2632.

United States Court of Appeals,
Tenth Circuit.

May 1, 1986.

Eric Isbell-Sirotkin, Albuquerque, N.M., for petitioner.

Patricia King, Atty. (Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, with her on the brief), N.L.R.B., Washington, D.C., for respondent.

Timothy L. Salazar, (George Cherpelis and Laurie A. Vogel with him on brief), Cherpelis and Associates, P.A., Albuquerque, N.M., for intervenor.

Before BARRETT and MOORE, Circuit Judges, and CHILSON *, District Judge.

CHILSON, Senior District Judge.

### OPINION AND ORDER

This is an appeal by the Appellant ("the Union") from a Decision and Order of the Appellee, National Labor Relations Board ("the Board"), entered on April 30, 1984.

Mason & Hanger-Silas Mason Co., Inc. intervened and is referred to herein as the "employer."

### STATEMENT OF THE CASE

For many years prior to and since this action, scientific research important to the national security of the United States was conducted at the Los Alamos National Laboratories located at Los Alamos, New Mexico. Prior to October 1981, the security of the laboratories and their operations was provided by federal employees.

---

* Honorable Hatfield Chilson, Senior Judge, United States District Court for the District of Colorado, sitting by designation.

In 1981, the United States contracted with Mason & Hanger-Silas Mason Co., Inc. ("the Company") to provide the security functions for the laboratories. The Company took over the guarding duties in October 1981 with a guard force consisting of former federal employees who had been guards at the facilities and some new hires.

The Company was and is contractually obligated to provide guard service 24 hours a day, 7 days a week.

In December 1981, a representation election was held which resulted in the Union's certification as a bargaining representative of the guard employees. After prolonged negotiations, a bargaining agreement between the Company and the Union was entered into on February 9, 1983.

In the meantime, two cases were filed by the Union charging the Company with unfair labor practices.

The first case, No. 28–C.A.–6944, was filed by the Union in June 1982, alleging Larry Romero was unlawfully warned by the employer on May 7, 1982, for advising employees on his shift to disregard Company rules which required the employees to pick up their weapons and otherwise get ready for formation prior to 3:00 P.M. in order to be ready for duty by 3:06 P.M.

Larry Romero had been a guard at Los Alamos since 1973. When the Company took over the guarding functions in October 1981, Romero became an employee of the Company and Vice President of the Union.

On November 9, 1982, pursuant to an informal settlement agreement approved by the Regional Director, the Company notified Romero in writing that the May 7 warning was being removed from its files.

The second case, No. 28–C.A.–7255, was filed by the Union on December 23, 1982, alleging that the Company violated Section 8(a)(1)(3) and (4) of the National Labor Relations Act by terminating the employment of Union members Romero and Demecio Gonzalez in December 1982, for their refusal to work overtime. As previously noted, the Company was contractually obligated to provide guard service 24 hours a day, 7 days a week.

In May 1982, the Company's Chief of Security, Everhart, learned that a guard station had been closed because no volunteer could be found to replace an absent guard. Everhart, in May 1982, circulated a memo to shift commanders and the Union President, Vaszuez, stating:

Station Manning

Under no circumstances will a station be closed due to shortage of personnel.

In the event it is not possible to obtain personnel for voluntary overtime, either from the concerned Company's call list or doubling from the preceding company, the junior Inspector from the concerned Company will be called and directed to work.

Refusal to work directed overtime may have the most serious consequences, to and including termination.

In February 1983, the Regional Director vacated his approval of the settlement agreement in Case No. 28–C.A.–6944 and issued a consolidated complaint based on the May 7 warning to Romero and the December discharge of Romero and Gonzalez.

The two consolidated cases were heard by Administrative Judge David G. Heilbrun, acting as trial examiner, in August 1983.

On December 30, 1983, the Judge issued his decision in which he concluded:

1. By discriminatorily discharging Larry Romero on December 22 because of his support for the Union, Respondent engaged in unfair labor practices affecting commerce within the meaning of Section 8(a)(1) and (3) and ordered Romero's reinstatement and other relief.

2. By discriminatorily issuing a written warning to Larry Romero on May 7 Respondent has further violated Section 8(a)(1) and (3) and ordered the Company to remove from its files any reference to the warning.

3. General Counsel has failed to prove that Respondent unlawfully discharged Demecio Gonzalez.

4. General Counsel failed to prove that Respondent unilaterally changed its established procedure for the overtime manning of vacant posts.

The Company filed exceptions to Conclusions 1 and 2 of the Administrative Law Judge and sought review thereof by the National Labor Relations Board.

After its review, the Board, on April 30, 1984, entered its decision concluding:

We conclude that the General Counsel has not proven by a preponderance of the evidence that the Respondent discharged Romero in violation of Section 8(a)(3) and (1). Further, because the Respondent has not been shown to have committed any unfair labor practices since the November 1982 settlement agreement concerning the 7 May warning, we find it appropriate to reinstate that settlement agreement. Accordingly, without reaching the merits of the alleged unlawful warning, we shall reinstate the settlement agreement and dismiss the complaint in its entirety.

The Board then entered an Order dismissing the Complaint and reinstating the settlement agreement in Case No. 28–C.A.–6944.

The Union appealed the Board's Decision and Order to this Court.

The guidelines for this Court's review of the Board's Findings and Conclusions are well established by the following decisions of this Circuit.

In *S.A. Healy Company, Petitioner, v. National Labor Relations Board, Respondent*, 435 F.2d 314, at 316, this Court stated:

"The Trial Examiner acts for the Board in making initial findings and conclusions; however, the Board is the final determinator of the elements of the charge before it and is not bound by the Examiner's findings. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Rocky Mountain Natural Gas Co. v. N.L.R.B.*, 326 F.2d 949 (10th Cir.1964); *N.L.R.B. v. Sapulpa Typographical Union*, 321 F.2d 771 (10th Cir.1963)."

In *Pennypower Shopping News, Inc., Petitioner v. National Labor Relations Board, Respondent*, 726 F.2d 626, at page 629 it is stated:

"The Board's factual findings are entitled to acceptance by a reviewing court so long as they are supported by substantial evidence in the record considered as a whole. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The standard of review is not altered simply because the administrative law judge and the Board have reached contrary conclusions. *U.S. Soil Conditioning v. N.L.R.B.*, 606 F.2d 940, 945 (10th Cir.1979). We must still start with the findings made by the Board and accept them if they are supported by substantial evidence. *N.L.R.B. v. Pacific Grinding Wheel Co.*, 572 F.2d 1343, 1347 (9th Cir. 1978)."

In *National Labor Relations Board, Petitioner v. Montgomery Ward & Co., Respondent*, 554 F.2d 996, at 999, it is stated:

"In *N.L.R.B. v. Central Machine and Tool Company*, 429 F.2d 1127 (10th Cir. 1970), *cert. denied*, 401 U.S. 909, 91 S.Ct. 870, 27 L.Ed.2d 807 (1971), we stated the standard of our review:

... Our review is limited to searching the record to see if there is substantial evidence to support the fact findings. 29 U.S.C. § 160(e). We do not sit as a super trial examiner, and do not weigh the credibility of one witness against another nor do we search for contradictory inferences ... 429 F.2d at 1129.

See also: *N.L.R.B. v. Dover Corporation, Norris Division*, 535 F.2d 1205 (10th Cir.1976), U.S. Appeal Pending; *N.L.R.B. v. Okla-Inn*, 488 F.2d 498 (10th Cir.1973); *N.L.R.B. v. Gold Spot Dairy, Inc.*, 417 F.2d 761 (10th Cir.1969)."

In *National Labor Relations Board, Petitioner, v. Western Bank and Office Sup-*

*ply Company*, 283 F.2d 603, at 605, this Court stated:

"The Act proscribes the right to hire and fire only when it is employed as a discriminatory device. Discrimination may not be inferred from the fact that the discharged employee was a union member. The purpose or motivation of the employer is controlling, and the presence or lack of anti-union background is pertinent in a determination thereof."

We have reviewed the Decision of the Administrative Judge and the Decision and Orders of the Board in the light of the law as above set forth and the evidence.

### Romero's Discharge

As to the Judge's Conclusion No. 1, that Romero was discriminatorily discharged because of his support of the Union, the Judge stated: "The issue is close, however, on balance I cannot avoid inferring respondent was resentful enough that when the opportunity presented itself, a discriminatory discharge was visited on Romero." (Page 7, Judge's Decision).

On review of the same evidence as that before the Judge, the Board found:

On 5 December, which was the first of Romero's 2 days off that week, the Respondent needed two employees to work overtime in order to have a full complement on the C shift. About 2:20 P.M. the Respondent's desk officer, Lieutenant Schmahl, began making telephone calls to employees on the "day off" list, starting from the top of the list. Romero, who was number seven on the list that day, was the first one reached by Schmahl. Schmahl told Romero that he was needed for overtime, but Romero responded that he was leaving for Colorado. Schmahl then asked Romero if he was refusing to work overtime and Romero said, "I guess I am refusing." On 7 December Romero was called in to the Respondent's office where he was asked why he had refused the overtime. Romero explained that he had to go to Colorado to help out a friend whose car had broken down.

The Respondent informed Romero that it would investigate the matter and, if it were determined that Romero had been insubordinate, he would be terminated. On 22 December, Romero was notified that his reason for refusing the overtime was not sufficient, and therefore he was being terminated for willful disobedience and insubordination. (Board's Decision, pages 3 and 4.).

The Board concluded:

"Contrary to the Judge, we find the evidence insufficient to establish that the Respondent discharged Romero because of his support for the Union ...." (Page 4, Board's Opinion).

■ We find the Board's conclusion is supported by substantial evidence and the Board's conclusion is hereby affirmed.

### Judge's Conclusion No. 2

The Judge in his Decision of December 30, 1983, concluded that the Company violated Section 8(a)(1) and (3) by discriminatorily issuing a written warning to Larry Romero on May 7, 1982, and ordered the Company to "remove from its files any reference to the written warning and notify Larry Romero in writing that this has been done and that evidence of this discipline will not be used against him in any future way." (Pages 7 and 8, Judge's Decision).

With respect to the May 7 warning, the Board made the following findings:

Romero worked on "Company C," or the C shift, which began at 3 p.m. Pursuant to company policy, employees had to line up "at formation" 6 minutes after the start of their shift.

According to Romero, employees started to pick up their weapons and otherwise get ready for formation prior to 3 p.m. in order to be ready by 3:06 p.m. On 6 May 1982, just prior to the start of the C shift, Romero advised employees in the gunroom that they should not be performing job tasks before 3 p.m. and asked them to wait until 3 p.m. Romero repeated this advice shortly before 3 p.m. in the parking lot 7 May. Apparently, a

sufficient number of employees listened to Romero so as to result in formation being delayed. On 7 May the Respondent issued a written warning to Romero for "interference with the work of others," which the Respondent repeated orally to Romero at a grievance meeting 19 May. The respondent also issued warnings to at least 10 other employees for being late to formation, but these were rescinded after the employees agreed not to engage in such conduct again.

On 15 June the Union filed an amended charge in Case 28–C.A.–6944 alleging, inter alia, that the Respondent took disciplinary action against Romero because he engaged in protected concerted activities. An 8(a)(1) and (3) complaint based on the warnings was issued 2 July. On 9 November, pursuant to an informal settlement agreement approved by the Regional Director, the Respondent notified Romero in writing that the 7 May warning was being removed from its files.

On 11 February, 1983, the Regional Director vacated his approval of the settlement agreement in Case 28–C.A.–6944, set aside the settlement agreement, and issued a consolidated complaint based, inter alia, on the 7 May warning and the 22 December discharge.

■ The Court finds that the Regional Director's action in attempting to set aside the settlement agreement in Case 28–C.A. –6944 was an attempt to reintroduce the issue of the May 7 warning which had been settled on November 9, 1982.

The Board concluded:

Based on all of the foregoing we conclude that the general counsel has not proven by a preponderance of the evidence that the Respondent discharged Romero in violation of § 8(a)(3)(1). Further, because the Respondent has not been shown to have committed any unfair labor practices since the November 1982 settlement agreement concerning the 7 May warning, we find it appropriate to reinstate that settlement agreement. Accordingly, without reaching the merits of the alleged unlawful warning, we shall reinstate the settlement agree-

ment and dismiss the complaint in its entirety.

The Board then entered the following order:

"The complaint is dismissed and the settlement agreement in Case 28–C.A.–6944 is reinstated."

The Court finds that the findings and orders of the Board are supported by substantial evidence and the Court hereby AFFIRMS the decision and orders of the National Labor Relations Board and dismisses this appeal.