875 F.2d 866
 135 L.R.R.M. (BNA) 2408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ADAIR STANDISH CORPORATION, Respondent.
 No. 88-5813.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1989.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and CHARLES M. ALLEN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Petitioner, the National Labor Relations Board ("NLRB" or "Board"), seeks enforcement of its order holding that respondent failed to bargain with and furnish requested information to the union. In a cross-petition, respondent seeks an order setting aside the certification of the union as the collective bargaining representative of the respondent's production and maintenance employees. Because substantial evidence supports the Board's findings, the Board's petition for enforcement is granted, and respondent's cross-petition to set aside the certification of the union is denied.
 
 I.
 
 2
 Respondent Adair Standish Corporation employed thirty-eight or thirty-nine workers in July 1985, six or seven of whom worked on the night shift. On July 15, 1985, plant manager Dennis Adair received a certified letter notifying him that a petition for certification of representation had been filed by Local 282-C, Graphic Communications International Union, AFL-CIO. On August 2, the union and respondent entered into a stipulation for certification upon consent election, and the election was scheduled for the afternoon of September 11, 1985. During July, August, and September 1985, Thelma McConnell, the International's regional organizer, held a total of seventeen meetings with respondent's employees. Brian Lachcik, an employee working on respondent's night shift, was perhaps the union's most ardent supporter among respondent's workers. He was the only employee in attendance at three of the seventeen union meetings held during the election period.
 
 
 3
 In order to be entitled to an NLRB election, the union was required to make a thirty percent showing of interest among respondent's employees. To accomplish this, the union passed out authorization cards at union meetings for employees to sign. Thelma McConnell testified that the union gave these cards to employees who attended union meetings, and told attendees that if they wished they could take extra cards for employees who were not at the meeting. She testified, however, that the union "didn't specifically signle [sic] out any person to take authorization cards. If any one employee had a friend who wasn't there and he wanted to take a card, we provided them a card to take." Ms. McConnell further testified that she didn't know if Brian Lachcik took extra cards, but she did remember that another of respondent's employees, Larry Foster, had asked for some extra cards.
 
 
 4
 Darrell Baugham, an employee on the night shift, testified that Brian Lachcik told him that if Baugham did not go to union meetings, there were people within the shop who would take his job when the union was certified. Baugham also testified that Lachcik told him that he wouldn't have a job if he did not sign the union authorization card, and that Lachcik stated that if workers did not sign their authorization cards, after the election they would have to pay an initiation fee to the union; if they did sign the cards, however, the initiation fee would be waived. Baugham stated that Lachcik showed him and other employees authorization cards, but he never saw him hand any out.
 
 
 5
 Both Thelma McConnell and Edwin Krieg, the president of Local 282-C, testified that neither Larry Foster nor Brian Lachcik held any position with the union. Krieg also testified that at one of the union meetings, he distributed a mimeographed sheet which identified the officers of the union. Both testified that at several union meetings they explained that initiation fees would be waived for all current employees, regardless of whether they had signed authorization cards, and there would be no union dues for the first thirty days after the contract had been approved.
 
 
 6
 The election was held September 11, 1985, and twenty-five votes were cast in favor of the union, eleven against, and one ballot was challenged. Respondent thereafter filed a total of five objections to the election. After a hearing was held, a hearing officer issued a report and recommendation rejecting all five objections.
 
 
 7
 The hearing officer concluded that the statements made by Brian Lachcik were improper, but there was no evidence of any "threat or impropriety by a Union official, and there is no showing that the Union knew of any improper conduct on the part of Lachcik ... or that it failed to repudiate [it]. Therefore, threats by Lachcik ... cannot be attributed to the Union and must be considered as being those of a third party." For this reason, the hearing officer recommended that the results of the election be upheld.
 
 
 8
 Respondent appealed the hearing officer's determination to the Board, and the Board adopted the hearing officer's findings and specifically upheld the conclusion that Lachcik was not a union agent on the ground that "there is no evidence that he was a member of any in-plant organizing committee, that he ever distributed authorization cards, or that he had ever been instructed or directed by any union agent regarding the solicitation of employees to sign such authorization cards."
 
 
 9
 Respondent subsequently refused to bargain with or to supply requested information to the union. The union filed a complaint with the Board, and respondent admitted that it refused to bargain with the union and to supply the information requested, but defended these actions on the ground that the union had been improperly certified as a collective bargaining representative. An Administrative Law Judge subsequently issued a decision ordering respondent to cease and desist from its violations of the Act and to bargain on request with the union. The Board thereafter affirmed the ALJ's order, and this appeal followed.
 
 II.
 
 10
 It is well settled that elections conducted pursuant to Sec. 9(c)(1)(A) of the National Labor Relations Act, 29 U.S.C.A. Sec. 159(c)(1)(A) (1973), require the Board "to establish 'the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.' " NLRB v. Savair Manufacturing Co., 414 U.S. 270, 276 (1973) (quoting NLRB v. Tower Co., 329 U.S. 324, 330 (1946)). The Savair Court specifically held that a union "offer to waive an initiation fee for those employees signing a recognition slip prior to the election ... allows the union to buy endorsements and paint a false portrait of employee support during its election campaign." Id. at 277; see also NLRB v. Okun Brothers Shoe Store, Inc., 825 F.2d 102, 107-08 (6th Cir.1987), cert. denied, 108 S.Ct. 1109 (1988). Thus, there can be no question that if union officials had told employees that initiation fees and union dues would be waived for only those employees who signed authorization cards, or if union officials had told employees that those who did not sign the authorization cards would find their jobs in jeopardy once the union was installed, the election must be overturned.
 
 
 11
 In this case, however, the union has argued, and the Board held, that the election need not be overturned because the improper actions were taken by Brian Lachcik, who, they contend, was not an agent of the union.
 
 
 12
 Generally, a union is not responsible for the acts of an employee, unless the employee is an agent of the union. See, e.g., NLRB v. Georgetown Dress Corp., 537 F.2d 1239, 1244 (4th Cir.1976). To determine whether an employee such as [Lachcik] is an agent of a union, the question must be analyzed within the framework of common law agency principles. NLRB v. Local # 64, Falls City Council, 497 F.2d 1335, 1336 (6th Cir.1974). Common law principles of agency, however, are not to be rigidly applied. 29 U.S.C. Sec. 152(13); Worley Mills, Inc. v. NLRB, 685 F.2d 362, 366 n. 2 (10th Cir.1982). The question whether an employee is an agent is a question of fact, id. at 366; the parties seeking to prove that an employee is a union agent must show that the union "instigated, authorized, solicited, ratified, condoned, or adopted" the employee's actions or statements. NLRB v. Miramar of California, 601 F.2d 422, 425 (9th Cir.1979).... At the minimum, the parties seeking to hold the Union responsible for an employee's conduct based upon the theory of apparent authority must show that the Union cloaked the employee with sufficient authority to create a perception among the rank-and-file that the employee acts on behalf of the Union, e.g., NLRB v. Georgetown Dress Corp., 537 F.2d at 1244; NLRB v. Urban Telephone, 499 F.2d 239, 244 (7th Cir.1974), and that the Union did not disavow or repudiate the employee's statements or actions. NLRB v. Advance Systems, Inc., 681 F.2d 570, 576 (9th Cir.1982); NLRB v. Urban Telephone, 499 F.2d at 244.
 
 
 13
 Kitchen Fresh, Inc. v. NLRB, 716 F.2d 351, 355 (6th Cir.1983).
 
 
 14
 As the above passage makes clear, the election at issue in this case may be set aside only if respondent can show that Lachcik was a union agent. As was also noted above, this is a question of fact. Therefore, our review is governed by the prescription of 29 U.S.C.A. Sec. 160(e) (1973) that "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." We have previously rejected Board arguments that an abuse of discretion standard should apply to cases in which the Board has applied its rules to a particular fact situation. NLRB v. State Plating & Finishing Co., 738 F.2d 733, 737-38 (6th Cir.1984). Under the substantial evidence standard, this court must affirm the Board's findings if they are supported by substantial evidence on the record considered as a whole even if this court may have reached a different conclusion had the matter been considered de novo. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). With these principles in mind, we now address respondent's contentions that Lachcik was in fact an agent of the union.
 
 
 15
 The Board based its finding that Lachcik was not a union agent partly on the testimony of McConnell and Krieg, which the hearing officer credited, that Lachcik held no position within the union, and partly on the absence of evidence indicating that Lachcik distributed any authorization cards or had ever been instructed or directed by any union agent to solicit employee signatures. Respondent contends that because authorization cards were available for Lachcik, the Board's decision in Davlan Engineering, Inc., 283 NLRB No. 124 (1987) requires a conclusion that a union will be responsible for representations made by employees who solicit authorization card signatures.
 
 
 16
 Respondent's argument must be rejected because substantial evidence supports the Board's finding that Lachcik never solicited signatures. The testimony of Baugham, as well as that of two other night shift employees, Bill McMann and Michael Brieszk, was all consistent in that each stated that he had not seen Lachcik handing out authorization cards for signature. No employee testified that Lachcik asked him to sign an authorization card. Moreover, respondent presented no evidence showing that the union "instigated, authorized, solicited, ratified, condoned or adopted" Lachcik's actions or statements. Kitchen Fresh, Inc., 716 F.2d at 355. At most, respondent has shown that the union made authorization cards generally available at union meetings. That is not the equivalent of instigating, authorizing, soliciting, ratifying, condoning or adopting Lachcik's actions.
 
 
 17
 For the foregoing reasons, we hold that substantial evidence supports the Board's finding that Lachcik was not an agent of the union.
 
 
 18
 The Board's petition for enforcement of its order is GRANTED, and respondent's cross-petition seeking decertification of the union is DENIED.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation